IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of a class of similarly-situated persons,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IQVIA INC.,<br><br>　　　　Defendant. | Case No.<br><br>**Complaint – Class Action** |

## CLASS ACTION COMPLAINT

Plaintiff, Brian J. Lyngaas, D.D.S., P.L.L.C. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and alleges the following upon information and belief against IQVIA Inc. ("Defendant"), except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge.

## PRELIMINARY STATEMENT

1. Defendant sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, including regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2. Defendant sent Plaintiff at least one unsolicited advertisement by facsimile, a true and correct copy of which is attached hereto as Exhibit A. Discovery might reveal more. Defendant sent the same or substantially similar advertisements by facsimile to the other class members.

3. <u>Exhibit A</u> solicited participation in Defendant's commercial data-collection business. Specifically, Defendant's fax offered $30 to complete an "online survey - National Healthcare Census" ("NHC"). <u>Exhibit A</u> ("Receive a guaranteed $30 for completing a short online survey." … "Timely check payments in 2 to 4 weeks – as good as cash").

4. Plaintiff brings this action on behalf of a nationwide class of all persons or entities sent one or more of Defendant's unsolicited facsimiles seeking participation in a payment-for-participation survey or study. Plaintiff alleges that such facsimiles are TCPA "advertisements."

5. Unsolicited facsimile advertisements cause injury or damage to the recipients. Such a "junk" fax wastes the recipient's valuable time. A junk fax typically uses the recipient's fax machine, and often its paper and ink toner, for the advertiser's purposes. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Unsolicited advertisements sent by facsimile are unlawful.

6. For the entire class, Plaintiff seeks relief under the TCPA; specifically, (a) statutory damages for each violation of the TCPA, including increased statutory damages if the Court determines Defendant's violations were knowing or willful and (b) an injunction to halt Defendant's unlawful fax advertising program.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff is a Michigan professional limited liability company operating a licensed dental practice in Livonia, Michigan. Dr. Brian Lyngaas is the dentist.

8. Defendant, IQVIA Inc., is a Delaware corporation with its principal place of business in Plymouth Meeting, Pennsylvania. Formerly known as QuintilesIMS, Defendant is successor by merger to a number of corporations including ImpactRX, Inc. and AlphaImpactRX, Inc. operating out of 550 Blair Mill Road, Horsham, PA, 19044-2376.

9. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under federal law, 47 U.S.C. § 227.

10. Personal jurisdiction exists over Defendant in Pennsylvania because its principal place of business is in this State, because Defendant transacts business here, and because Defendant committed tortious acts in this State by causing the transmission of unlawful advertisements by facsimile.

11. Venue is proper in the Eastern District of Pennsylvania because Defendant is located in Horsham, PA, Defendant committed statutory torts in this District, and a significant portion of the events took place here.

## FACTS

12. Defendant is engaged in data mining for the healthcare industry. Defendant collects human health data for its customers and to add to its proprietary, commercially-available database. Defendant compensates dentists and other healthcare professionals to provide information about drug prescriptions, and then

3

aggregates, organizes, and sells that data to support the marketing efforts of drug makers and others.

13. Defendant is the world's largest "contract research organization" ("CRO").[1] It serves health information industries, including the pharmaceutical, biotechnology, and medical device industries. It provides preclinical services including clinical monitoring and data management.

14. Defendant is a for-profit business and sometimes does business under the brand name Impact Network. Part of Defendant's business practice involves sending unsolicited facsimiles to healthcare providers (dentists, doctors, etc.) soliciting their valuable participation in surveys or studies in exchange for monetary compensation.

15. Defendant sent Plaintiff at least one unsolicited advertisement by facsimile. A true and correct copy of a fax Plaintiff received on June 13, 2017, is attached as Exhibit A. Plaintiff received the fax on a standalone machine that automatically printed Defendant's advertisement on Plaintiff's paper.

16. Exhibit A is a one-page document from "Impact Network" (one of Defendant's brand names) and soliciting paid participation in an online survey.

17. Exhibit A seeks participation in Defendant's National Healthcare Census ("NHC").

---

[1] *See* The Vall D'Hebron Campus signs a Prime Site Agreement with IQVIA, the world's largest clinical trials management company, https://www.iqvia.com/en/locations/spain/newsroom/2018/04/prime-site-agreement (last visited May 18, 2020).

18. The NHC is a "nationally syndicated survey ask[ing] about over the counter product recommendations [by healthcare providers]." <u>Exhibit B</u>.

19. Before a provider can access the NHC, he or she must register on www.myimpactnetwork.com. <u>Exhibit A</u>.

20. Defendant owns and operates www.myimpactnetwork.com. <u>Exhibit C</u>.

21. According to the site's privacy policy, Defendant "may collect a variety of personally identifiable information, including but not limited to: name, email address, mailing address, medical degree, practice description, DEA number, state license number and medical specialties." <u>Exhibit C</u>. "Submission of registration data is mandatory to allow use of [www.myimpactnetwork.com]." *Id*.

22. The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b) (1) (C). The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id.*, § 227 (a) (5).

23. Defendant sent <u>Exhibit A</u> and other facsimiles to Plaintiff and others throughout the United States. Plaintiff intends to locate those advertisements in discovery. *See* <u>Exhibit D</u>, demand for preservation of evidence.

24. Defendant's facsimiles advertised and solicited compensated participation in Defendant's commercially available data collection business, whether for client-funded studies or to supplement or refine Defendant's own commercially-

5

available database.

25. Defendant provides both cash and non-cash points and compensation to induce health professionals to provide valuable participation in "surveys" and "studies," and Defendant sells or licenses the collected information to Defendant's paying customers.

26. Plaintiff did not expressly invite or give permission to anyone to send Exhibit A or any other advertisement from Defendant to Plaintiff by facsimile.

27. Plaintiff did not have an established business relationship ("EBR") with Defendant, but EBR is irrelevant in this case because Defendant's fax does not contain the opt-out notice required by the TCPA.

28. Plaintiff and the other class members owed no obligation to protect their fax machines from Defendant's unsolicited advertisements. Their fax machines are ready to send and receive their urgent communications, or private communications about their patients' medical needs, not to receive Defendant's unlawful advertisements.

29. Defendant's unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving or sending authorized faxes, cause undue wear and tear on the recipients' fax machines, waste paper and ink toner, and always waste the recipients' valuable time in discerning the source and purpose of the unsolicited message. An unsolicited fax interrupts the recipient's privacy. Reviewing the fax wastes the recipient's valuable time that would have been spent on something else.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this case as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> All persons and entities sent one or more facsimiles (a "fax") after May 19, 2016, soliciting participation in a survey or study in exchange for compensation, without prior express invitation or permission and without the clear and conspicuous opt-out notice required by 47 C.F.R. 64.1200 (a) (4) (iii).

Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendant's fax advertising practice and about any affirmative defenses Defendant pleads.

31. Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

32. In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendant sent by fax, not merely the fax attached hereto as Exhibit A.

33. Defendant's fax advertising program involved other, substantially-similar advertisements soliciting healthcare professionals to provide valuable information in exchange for compensation.

34. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of

inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

35. **Numerosity/impracticality of joinder.** The class is so numerous that individual joinder of each member is impracticable. Plaintiff does not know the precise number of class members or their identities, but expects to discover such information in Defendant's records or the records of third parties.

36. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a. Whether <u>Exhibit A</u> and other to-be-discovered facsimiles sent by or on behalf of Defendant solicited participation in surveys or studies in exchange for compensation and, in so doing, advertised the commercial availability or quality of any property, goods or services;

    b. The manner and method used to compile or obtain the list(s) of fax numbers to which Defendant's facsimiles were sent;

    c. The manner and method used to send facsimiles to Plaintiff and the other class members;

d. Whether Defendant violated the TCPA and if so whether the Court should award statutory damages to Plaintiff and the other class members;

e. Whether Defendant willfully or knowingly violated the TCPA and if so whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount; and

f. Whether the Court should enjoin Defendant from sending facsimiles like those at issue without prior express invitation or permission or, in the case of an EBR, without the clear and conspicuous opt-out notice the TCPA requires.

37. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because all were injured by the same wrongful conduct. Each was sent one or more of Defendant's unsolicited advertisements by facsimile. If Plaintiff prevails on its claims, then the other class members will prevail as well.

38. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained attorneys who are competent and experienced in complex class action litigation, and in TCPA litigation in particular. Plaintiff intends to vigorously prosecute this action. Plaintiff and counsel will fairly and adequately protect the interest of the class.

39. **A class action is the superior method of adjudicating the common**

**questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford and wanted to undertake individual litigation, such cases would unduly burden the court system. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

### Telephone Consumer Protection Act, 47 U.S.C. § 227

40.   The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

41.   Defendant sent unsolicited advertisements by facsimile to Plaintiff and the other class members.

42.   An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

43.   Exhibit A advertises the commercial availability or quality of property, goods, or services.

44.   Exhibit A advertises an opportunity to exchange a service for payment.

45.   Exhibit A advertises money in exchange for answering an online survey.

46. Defendant did not obtain Plaintiff's express invitation or permission to send an advertisement by facsimile. Therefore, Defendant will not be able to allege or prove a defense of "prior express invitation or permission."

47. Plaintiff did not have an "established business relationship" ("EBR") with Defendant when Exhibit A was sent by facsimile.

48. Exhibit A does not include the clear and conspicuous opt-out notice the TCPA requires on every advertisement sent on the basis of an EBR. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

49. Section (b) (1) (C) (iii) of the TCPA requires that an opt-out notice must:

> (i)   … [be] clear and conspicuous and on the first page of the unsolicited advertisement;
>
> (ii)   … state[] that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
>
> (iii)   … set forth the requirements for a request under subparagraph (E)[ *i.e.*, the request (1) must identify the telephone number(s) of the telephone facsimile machine(s) to which the request relates, (2) must be made to the telephone or facsimile number of the sender provided pursuant to subparagraph (D) (iv), and (3) will not be binding if a person at the requesting party provides express invitation or permission to the sender "subsequent to such request"]; and
>
> (iv) … include[]—
>
>> (I)   a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and
>>
>> (II)   a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited

  advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses.

50. Defendant sent unsolicited facsimiles without the required opt-out notice to Plaintiff and the other class members offering compensation in exchange for participation in one or more internet or telephone surveys or studies.

51. Defendant intended to gather opinions and other valuable market research data from participants and then provide that information to Defendant's paying clients in the healthcare industry.

52. The TCPA provides a private right of action as follows:

  3. <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

   (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

   (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

   (C) Both such actions.

47 U.S.C. § 227 (b) (3).

53. The Court may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

54. Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending

unsolicited advertisements by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members.

55.     The TCPA is a strict liability statute and Defendant is liable even if its actions were negligent. 47 U.S.C. § 227 (b) (3).

WHEREFORE, Plaintiff demands judgment individually and on behalf of all others similarly situated, and against Defendant, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds that Defendant willfully or knowingly violated the TCPA, the Court exercise its discretion and increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enjoin Defendant from sending unsolicited advertisements by facsimile; and

E.     That the Court award costs and such further relief as it deems just and proper.

Respectfully submitted,

Brian J. Lyngaas, D.D.S, P.L.L.C., individually and on behalf of a class of similarly-situated persons

By: /s/ Richard Shenkan
   One of its attorneys

Richard Shenkan (PA 79800)
SHENKAN INJURY LAWYERS, LLC
P.O. Box 7255
New Castle, PA 16107
(800) 601-0808 (phone)
rshenkan@shenkanlaw.com

Phillip A. Bock (*pro hac vice* to be sought)
Tod A. Lewis (*pro hac vice* to be sought)
Molly Stemper (*pro hac vice* to be sought)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500 (phone)
service@classlawyers.com