IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of all others similarly-situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 20-2370 |
| v. | ) ) ) | Hon. Nitza I. Quiñones Alejandro |
| IQVIA, INC., | ) ) | PUTATIVE CLASS ACTION |
| Defendant. | ) ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL AND FOR *IN CAMERA* REVIEW

Plaintiff, Brian J. Lyngaas, D.D.S., P.L.L.C. ("Plaintiff"), seeks an order (1) compelling defendant, IQVIA, Inc. ("Defendant" or "IQVIA"), to produce withheld, responsive, non-privileged documents relating to the circumstances and reasons for the termination of Jordan Ferguson's employment on February 3, 2022, and (2) *in camera* review of documents IQVIA withheld as attorney-client privileged or attorney work product on its September 22, 2022, privilege log.

## I. Introduction.

In response to Plaintiff's request to produce "[d]ocuments and communications relating to the reasons for and circumstances surrounding the termination of Jordan Ferguson's employment," Defendant responded that it would produce only "documents sufficient to show the reasons for the termination." Ex. B. This response improperly allows Defendant unfettered discretion to cherry pick what documents to produce. Defendant should be compelled to produce all the relevant documentation.

In the meet-and-confer process, Defendant asserted a burden objection on the ground that the request would potentially require a review of months or years of emails to determine which were relevant to the termination. Plaintiff agreed to limit the production to documents created after January 1, 2022, and requests that the Court order production of such documents.

Second, Defendant has asserted privilege claims regarding redactions in a handful of email threads between Defendant and Mr. Ferguson that post-date the February 2022 termination of his employment. Ex. D. Some of these threads do not include an attorney participant. Based on the meet-and-confer process, Plaintiff understands that Defendant is not claiming an attorney-client relationship with Mr. Ferguson when the emails were exchanged. Rather, Defendant is claiming that the emails discuss privileged communications with, or privileged information gained by, Mr. Ferguson during his employment.

Defendant's privilege log does not contain enough specificity to determine what the purported subject matter of the redacted material is. The primary issue with these privilege claims is that, given Mr. Ferguson's allegations and the context of the information, it is likely that the redacted material concerns Mr. Ferguson's allegations of misconduct by Defendant. To the extent that Mr. Ferguson is making allegations that Defendant engaged in criminal or fraudulent testimony, the "crime/fraud" exception to attorney-client privilege likely applies here and his allegations are not privileged. Accordingly, Plaintiff requests that the Court conduct an *in camera* inspection of the 12 withheld documents to determine whether any or

all the redacted information is privileged, or should instead be disclosed to Plaintiff in unredacted form.

## II. Background.

Jordan Ferguson was deposed in this matter on November 11, 2021, when he was Defendant's employee. Since leaving Defendant's employ in February 2022, Mr. Ferguson told Defendant that he will not stand by his original deposition testimony, questioned whether Defendant was "ethical," claimed that Defendant sent "millions" of unsolicited faxes, and characterized himself as a "whistleblower." ECF 79-1.[1]

On August 11, 2022, the Court granted in part Plaintiff's motion to reconvene Mr. Ferguson's deposition (ECF 57), allowing "Plaintiff to conduct an additional deposition of Mr. Jordan Ferguson with respect to Mr. Ferguson's recent refusal to 'stand by his [prior] deposition testimony' and the activities he undertook for his former boss (Defendant) that he now purportedly questions." ECF 94. Since then, Defendant has produced documents in response to Plaintiff's third set of document requests. *See* Exhibit A (Plaintiff's third set of document requests) and Exhibit B (Defendant's responses and objections).

In its responses, Defendant objected to producing documents "relating to the reasons for and circumstances surrounding the termination of Jordan Ferguson's

---

[1]     *See* ECF 57, Plaintiff's motion to reopen the deposition of Jordan Ferguson and to hold open discovery for limited purposes related thereto; ECF 63, Defendant's opposition to ECF 57; ECF 64, Defendant's related motion for a protective order; ECF 68, Plaintiff's combined reply in support of ECF 57 and response in opposition to ECF 64; ECF 74, Defendant's reply in support of ECF 64; ECF 79, Plaintiff's motion to supplement briefing on ECF 64 with Mr. Ferguson's subsequent LinkedIn posts; ECF 91, Defendant's response to ECF 79.

employment." Ex. B. Instead, Defendant said it was producing only "documents sufficient to show 'the reasons for and circumstances surrounding the termination of Jordan Ferguson's employment with IQVIA.'" *Id.* During the meet-and-confer process, Defendant asserted a burden objection on the ground that the request would potentially require a review of months or years of emails to determine which were relevant to the termination. Plaintiff agreed to limit the request to documents created after January 1, 2022, and now requests that the Court order production of such documents. Exhibit C, meet-and-confer emails.

Defendant's document production includes 9 heavily redacted emails, all of which postdate the termination of Mr. Ferguson's employment with Defendant on February 3, 2022. Defendant also produced a privilege log (Exhibit D) concerning these 9 redacted documents and three other documents withheld in their entirety. The 9 redacted documents, which Defendant marked "confidential," are submitted under seal as Exhibits E-M (P.L. # 116-122, 125-126).[2]

Based on the meet-and-confer process, Plaintiff understands that Defendant is not claiming an attorney-client relationship with Mr. Ferguson postdating his employment with Defendant, when the emails at issue were exchanged with him. Ex. C. Rather, Plaintiff understands that Defendant is claiming that the emails include

---

[2]   Defendant's privilege log assigns unique "Privileged Document Numbers" ("P.L. #") to each document logged. *See* Ex. D. Plaintiff refers to each of these documents, which are marked confidential and separately submitted for filing under seal, by both Exhibit and P.L. designators. *E.g.*, Ex. M (P.L. # 126).

privileged communications about information Mr. Ferguson gained during his employment. *Id.*

Three of the documents on the privilege log were withheld in their entirety. Ex. D, at P.L. # 123, 124 and 127. Two of those (P.L. # 123 and 124) are email threads between defense counsel and Mr. Ferguson from March 2022, several weeks after his termination and around the time the Plaintiff filed its motion to reopen his deposition. Plaintiff understands that Defendant's attorneys were no longer representing Mr. Ferguson at that point. The subject matter of the emails is "Discovery Deposition Testimony." While the privilege log identifies the dates and participants in the emails, it does not provide any factual basis for determining what in the email is privileged and why—when did the communication described in the email take place, what attorney was involved, what was the general subject matter of that communication?

The third withheld document (P.L. # 127) is a memo "memorializing confidential legal advice from IQVIA Legal Department and outside counsel and investigation conducted at the direction of counsel." The title of the memo is "Jordan Ferguson Grievance matter." Ex. D. The log does not identify the author of the memo, does not identify any attorney by name, and does not specify whether any non-attorneys were authors or recipients of the memo.

The redacted documents consist of various iterations of email threads. Exs. E-M, (P.L. # 116-122, 125-126). Five of these documents, Exs. F-J (P.L. # 117-121) are communications in February and March 2022 between Mr. Ferguson and Manisha

Chugh, a Human Resources representative of Defendant, concerning his "Resignation." Neither Mr. Ferguson nor Ms. Chugh are identified on the log as attorneys, but the emails are claimed to contain "privileged legal advice" and "investigation conducted at the direction of counsel." The privilege log does not identify the subject matter of the legal advice or investigation, or when or by whom the legal advice was given. The privilege log further omits a third participant, Mark Snyder, a non-attorney who was Mr. Ferguson's supervisor at the time of his termination.

One of the 9 redacted documents, Ex. E (P.L. # 116) is a post-employment email from an in-house counsel, Brian McGaughan, to Ms. Chugh and Mr. Ferguson with the subject "Laptops." Ex. E (P.L. # 116). Again, it does not appear that Mr. McGaughan was an attorney for Mr. Ferguson at this point three weeks after his termination. The privilege log does not identify the subject of the privileged communication redacted from the email, when the communication took place, or who was the attorney involved (*e.g.*, Mr. McGaughan? Outside defense counsel?)

Finally, three of the most heavily redacted documents include emails between Defendant's outside defense counsel and Mr. Ferguson in May 2022, three months after the end of his employment by Defendant. Exs. K-M (P.L. # 122, 125 and 126). These emails have as their subject "Discovery Deposition Testimony" and out of 23 total pages, 18 are redacted in full. *Id*. Given that it does not appear that defense counsel was representing Mr. Ferguson at this point, the question arises as to when the referenced privileged communications took place, what attorney was involved,

6

and what the subject matter of the communication was. The privilege log does not answer any of these questions.

### III. Plaintiff's requests and Defendant's objections and responses.

**Request No. 1.** Documents and communications relating to the reasons for and circumstances surrounding the termination of Jordan Ferguson's employment with IQVIA, Inc.

**Response**: IQVIA objects to Request No. 1 to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. IQVIA further objects to Request No. 1 on the basis that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case. IQVIA objects to the extent that Request No. 1 seeks documents reflecting confidential, trade secret, proprietary, financial, and/or commercially sensitive information. IQVIA also objects to the extent Request No. 1 seeks documents protected by the privacy interests of any current employee or representative of IQVIA.

Subject to and without waiving its objections, and after a reasonable search, IQVIA responds that it will produce non-privileged documents sufficient to show "the reasons for and circumstances surrounding the termination of Jordan Ferguson's employment with IQVIA."

**Request No. 2.** Documents and communications relating to whether or not Jordan Ferguson expressed a willingness to provide future testimony in this matter.

**Response**: IQVIA objects to Request No. 2 to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. IQVIA further objects to Request No. 2 to the extent that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case.

Subject to and without waiving its objections, and after a reasonable search, IQVIA responds that to the extent any exist, it will produce non-privileged communications **with** Jordan Ferguson regarding his "willingness to provide future testimony in this matter."

**Request No. 3.** Documents relating to the assertion of the March 23, 2022, email from Tiffany Cheung (attached) that Jordan Ferguson advised IQVIA, Inc. that "he would not stand by his deposition testimony in this case."

**Response**: IQVIA objects to Request No. 3 to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving its objections, and after a reasonable search, IQVIA responds that to the extent any exist, it will produce non-privileged communications that are responsive to this request.

Exs. A-B.

## IV. Argument

**A.  The Court should compel Defendant to produce all documents created after January 1, 2022, relating to the circumstances of and reasons for Mr. Ferguson's termination of employment.**

Defendant objected to producing all documents relating to the circumstances of and reasons for Mr. Ferguson's termination of employment. Ex. B. Instead, Defendant asserted it would produce only "documents sufficient to show" the reasons for termination. *Id.*

In the meet-and-confer process, Defendant explained that the reasons for and circumstances of Mr. Ferguson's termination extended back over many months or years, and that reviewing all his emails to determine whether they were responsive would be an undue burden. Ex. C. Plaintiff therefore suggested that Defendant limit its production to all documents created after January 1, 2022, relating to the reasons for or circumstances of the termination. *Id.* Still, Defendant refused to produce.

Defendant's "documents sufficient to show" limitation is improper because it suggests that Defendant "might be excluding documents that are responsive to the

requests based upon its unilateral determination of what is 'relevant' or 'sufficient.'" *Bryant v. Mattel, Inc.,* Nos. C 04–09049 SGL etc., 2007 WL 5430893 at *5 (C.D. Cal. May 18, 2007). *See also Laryngeal Mask Company Ltd. v. Ambu A/S,* No. 07cv1988-DMS, 2009 WL 10672487 at *3 (S.D. Cal. Jan. 27, 2009) (unilateral limitation on selection of responsive documents not allowed).

There may be contexts in which limiting a document *request* to "documents sufficient to show" is appropriate, such as when the issue is simply to confirm a fact that is straightforward and undisputed, but Plaintiff's requests were not so limited.

Defendant's response is even more inappropriate because there seems to be a dispute as to whether Mr. Ferguson resigned from his position or was involuntarily terminated. *See, e.g.*, Exs. F-J (P.L. # 117-121).

Accordingly, Plaintiff respectfully requests that the Court compel Defendant to produce all responsive documents created after January 1, 2022, relating to the reasons for and circumstances of Mr. Ferguson's termination.

**B.    The Court should conduct an *in camera* inspection of three post-employment email chains with Mr. Ferguson as to which Defendant claims privilege.**

Defendant produced various versions of three email threads with Mr. Ferguson from which it redacted information on grounds of attorney-client privilege, Exs. E-M (P.L. # 116-122, 125-126) and, as to some, attorney work product, Exs. H-J, (P.L. # 119-121). Ex. D. Significantly, each of these email threads post-dated the February 2022 termination of Mr. Ferguson's employment. In general, communications with a company's former employees are not privileged. "[C]ounsel's communications with a former employee should be treated no differently from communications with any

9

other third-party fact witness." *U.S. ex rel. Hunt v. Merck-Medco Managed Care*, LLC, 340 F. Supp. 2d 554, 557 (E.D. Pa. 2004), citing with approval *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000). *See also Clark Equip. Co. v. Lift Parts Mfg. Co.*, No. 82-C-4585, 1985 WL 2917, at *5 (N.D. Ill. Oct. 1, 1985) ("It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit"). *See also City of New York v. Coastal Oil New York, Inc.*, No. 96 Civ. 8667 (RPP), 2000 WL 145748, at *2 (S.D.N.Y. Feb. 8, 2000) ("no basis for an assertion of the attorney-client privilege" where "counsel did not represent the former employee and there was no evidence that the conversations occurred for the purpose of legal advice").

In *Infosystems*, for example, the court "extended the privilege over former employees, but limited it to communications which themselves were privileged and which occurred during the employment relationship." *Merck-Medco*, 340 F. Supp. 2d at 556-557. There, the court permitted limited inquiry into whether an attorney had improperly influenced a former employee during the time the witness was employed.

Accordingly, communications between Mr. Ferguson and Defendant that post-date his termination are not privileged unless the communications relate to privileged communications or information he was party or privy to during his employment.

Defendant's privilege log is inadequate to establish the factual basis for its privilege and work product claims as to communications that happened during Mr.

Ferguson's employment. The party asserting privilege or work product protection bears the burden of proving that it applies to each communication at issue. *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 472-73 (E.D. Pa. 2005). This requires describing the withheld information with sufficient information to allow others to assess the claim. Fed. R. Civ. P. 2(c)(5)(A)(ii). This requires identification of the authors and recipients of withheld information. *SmithKline,* 232 F.R.D. at 476. It also requires "identify[ing] any specific attorney with whom a confidential communication was made." *Id.* at 477. Moreover, "[a] proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *Id.* at 482, *quoting Foster v. Berwind Corp.*, No. 90–0857, 1990 WL 209288, at *2 (E.D. Pa. Dec. 10, 1990).

Defendant's privilege log is inadequate. As noted, all the documents at issue post-date the termination of Mr. Ferguson's employment. Exs. E-M. Several of the documents are emails between Mr. Ferguson and a Human Resources employee, Manisha Chugh, who does not appear to be an attorney. *E.g.,* Exs. F-J (P.L. # 117-121). The log fails to provide any basis to conclude that these emails between two non-lawyers are privileged. To the extent that the privilege claim is based on internal references to earlier communications during Mr. Ferguson's employment there also is not enough information to support such a claim. *Merck-Medco*, 340 F. Supp. 2d at 556-557. The log only identifies the authors and recipients of the post-employment

emails. There is no information as to when the underlying "privileged" communication at issue took place or who the parties to it were.

Moreover, to the extent that they were communications with the potential to encourage unethical conduct in the context of this litigation, undermine the veracity of any witness's deposition testimony, or otherwise frustrate the truth-seeking process that is discovery under the Federal Rules, the crime-fraud exception to privilege may apply such that disclosure is necessary. Communications "designed to prevent disclosure of relevant information" are not entitled to protection under the attorney-client privilege because "the crime-fraud exception would [] apply." *LM Ins. Corp. v. ACEO, Inc.*, 275 F.R.D. 490, 492 (N.D. Ill. 2011) (ordering *in camera* inspection to determine whether communications with the potential to conceal relevant information were privileged).

Mr. Ferguson has specifically questioned whether what he did for Defendant in the context of this litigation was ethical. ECF 79-1. He has disclaimed his previous testimony. He has characterized himself as a "whistleblower" while proclaiming that the "truth" about Defendant's unsolicited faxing activity "needs to come out." *Id.*

Under these circumstances, particularly given Mr. Ferguson's allegations and the paucity of Defendant's privilege log, Plaintiff requests that the Court review the 12 documents on Defendant's log *in camera* to determine if they are in fact privileged and not subject to discovery. The Court has discretion to make such an *in camera* review, particularly when there are issues of alleged crime, fraud, or witness tampering. *Caserta v. Mut. Pharm. Co.,* No. 95-7323, 1996 WL 530104, at *2-3 (E.D.

12

Pa. Sept. 12, 1996). *Caserta* was an employment discrimination suit in which the plaintiffs sought production of a memorandum from outside counsel concerning the discharge of an alleged "whistleblower." The court concluded that efforts to coerce an employee into silence "may well fall within the crime-fraud exception" to attorney-client and work product protection. *Id.*, at *3. As a result, the court ordered the allegedly privileged memo submitted for *in camera* inspection.

Considering Mr. Ferguson's allegations and the vagueness of Defendant's privilege log, it is likely that the materials on which Defendant is claiming privilege involve similar allegations by Ferguson of improper conduct by Defendant, including pressuring him to give false testimony. Accordingly, *in camera* review is warranted to determine whether the withheld information is indeed protected or whether it should be disclosed to Plaintiff. Given that only 12 documents are at issue, Plaintiff respectfully submits that this request will not unduly burden the Court.

## V. Conclusion.

For all these reasons, Plaintiff respectfully requests that the Court enter an Order compelling Defendant: (1) to produce all documents created after January 1, 2022, and relating to the reasons for and circumstances surrounding the termination of Mr. Ferguson's employments; and (2) to provide to the Court for *in camera* inspection, in complete, unredacted form, the 12 documents described in Defendant's privilege log.

Dated: October 7, 2022

Respectfully submitted,

By: /s/ Jonathan B. Piper

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
(412)716-5800
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice)
Jonathan B. Piper (pro hac vice)
Molly E. Stemper (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. LaSalle St. Ste. 2100
Chicago, IL 60602
(312) 658-5500
service@classlawyers.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717)556-1080
lfs@saxtonstump.com

### *Counsel for Plaintiff and the Putative Class*

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on October 6, 2022, he caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

By: /s/ Jonathan B. Piper

14