IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of all others similarly situated,   )<br>)<br>)<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>IQVIA, INC.,   )<br>)<br>Defendant.   ) | **Civil Action No. 20-2370**<br><br>**Hon. Nitza I. Quiñones Alejandro** |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
(412) 716-5800
rshenkan@shenkanlaw.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717) 556-1080
lfs@saxtonstump.com

Phillip A. Bock (pro hac vice)
David M. Oppenheim
Barry J. Blonien (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. La Salle St. Ste. 2100
Chicago, IL 60601
(312) 658-5500
service@classlawyers.com

*Counsel for Plaintiff
 and the Putative Class*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I. The Impact Network Faxes Are Advertisements under the TCPA Because They Plainly Offer to Pay the Targeted Provider for Participating in the National Healthcare Census. ................................................................................... 2

II. The Undisputed Evidence Confirms that Plaintiff Received Impact Network Faxes on a Standalone Fax Machine using an Analog Telephone Line. ................................................................................................................................. 4

III. IQVIA Has No Evidence to Contradict Plaintiff's Testimony that It Did Not Give IQVIA Prior Express Invitation or Permission. ................................... 6

IV. IQVIA Acted Willfully or Knowingly. .......................................................................... 9

V. The Court Should Enter a Permanent Injunction Prohibiting IQVIA from Sending Facsimile Advertisements to Plaintiff. ...................................................... 10

CONCLUSION ........................................................................................................................ 11

CERTIFICATE OF SERVICE ............................................................................................... 12

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017) ................................. 6, 8

*Fischbein v. IQVIA*, No. 19-cv-5365, 2021 WL 3353975, *2 n.2 (E.D. Pa. July 30, 2021) ........................................................................................................................... 3

*Fischbein v. Olson Research Group, Inc.*, 959 F.3d 559 (3d Cir. 2020) .............. 1, 2, 3, 4

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 ....................................... 7

*Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129 (3d. Cir. 2019) .................. 2

**Statutes**

47 U.S.C. § 227(a)(5) ....................................................................................................... 2

## ARGUMENT

IQVIA opposes Plaintiff's motion for summary judgment on four grounds. First, as IQVIA had argued in its own motion for summary judgment, IQVIA maintains that the Impact Network faxes are not advertisements even though they plainly offer to pay recipients for participating in the National Healthcare Census, and the Third Circuit held in *Fischbein v. Olson Research Group, Inc.*, 959 F.3d 559 (3d Cir. 2020), that an offer to pay means that a solicitation is an advertisement. Second, IQVIA argues there are disputes as to whether Plaintiff received the faxes on a "fax machine" over a "regular telephone line," but the record evidence and testimony unequivocally show otherwise. Third, IQVIA contends that the mere possibility it contacted Plaintiff before sending the faxes or that Plaintiff voluntarily provided IQVIA with its fax number is sufficient to avoid summary judgment. Without evidence, it is not. Fourth, IQVIA denies that the evidence shows it acted knowingly or willfully.

IQVIA's arguments fail. *Olson* is controlling precedent and shows that the subject faxes are advertisements because they offer to pay recipients for completing surveys. The record clearly shows that Plaintiff received IQVIA's faxes on a stand-alone fax machine connected to an analog phone line, and IQVIA's effort to dispute those points falls flat. IQVIA has no evidence that it ever contacted Plaintiff or other recipients before sending the faxes or that Plaintiff voluntarily provided IQVIA with its fax number. And the record evidence shows that IQVIA sent the faxes notwithstanding knowledge that it may be unlawful to send unsolicited faxes. Plaintiff is entitled to judgment as a matter of law on its TCPA claim against IQVIA.

There is, however, a pending class certification motion. Plaintiff submits that that motion should be decided first, and if a class is certified, class members be given an opportunity to opt out, before the Court decides this motion.

## I. The Impact Network Faxes Are Advertisements under the TCPA Because They Plainly Offer to Pay the Targeted Provider for Participating in the National Healthcare Census.

The Telephone Consumer Protection Act ("TCPA") defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). In *Fischbein v. Olson Research Group, Inc.*, 959 F.3d 559 (3d Cir. 2020), the Third Circuit ruled that an "offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA." *Id.* at 564. In this case, the four faxes IQVIA sent Plaintiff offer Dr. Lyngaas money ($30 or $35) for participating in the National Healthcare Census. Following *Olson* as binding precedent, they are TCPA advertisements as a matter of law.

IQVIA disputes that "honorarium-based research invitations" are advertisements and says that reliance on *Olson* is "misguided." (IQVIA Opp. Br. at 12.) According to IQVIA, *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129 (3d. Cir. 2019)—but *Olson*—is "controlling Third Circuit precedent," and the subject faxes "fall squarely within *Optum*." (*Id.* at 11.) IQVIA states that "[m]ultiple courts" have rejected the ruling in *Olson* and that "courts across the country have considered such honorariums [sic] in exchange for study participation and reached the same

2

conclusion as *Optum*—that these types of faxes (including those providing honorarium) are not advertisements." (*Id*. at 12–13.)

IQVIA fails at every turn. This Court must follow *Olson*. The subject faxes are advertisements as a matter of law because they plainly offer to pay **the targeted provider** for participating in the National Healthcare Census. The *Olson* and *Optum* rulings are not in conflict, as IQVIA argues: The faxes at issue in *Optum* did not offer payment, so the court did not address that scenario. When the court confronted the issue in *Olson*, it ruled that an offer to pay recipients "transforms the solicitation of responses to market surveys into advertisements." *Olson*, 959 F.3d at 562.

Contrary to IQVIA's arguments, it does not matter what approach courts outside this Circuit have taken. As this Court held in *Fischbein v. IQVIA*, No. 19-cv-5365, 2021 WL 3353975, *2 n.2 (E.D. Pa. July 30, 2021), it "is bound by the Third Circuit's holding; thus, contrary decisions of other federal courts outside of this Circuit have no bearing on this Court's decision." The *Fischbein v. IQVIA* ruling also addressed the 2021 decision by the Consumer and Governmental Affairs Bureau of the FCC, *In re Acurian, Inc. Petition for Declaratory Ruling*, CG Docket No. 02-278, 36 FCC Rcd. 325 (2021), that IQVIA cites. It held that "*Acurian* does not displace the *Olson* holdings" or "call into question the Third Circuit's decision." *Id*. at *3, 4.

IQVIA argues, in the alternative, that *Olson* requires an **automatic** "offer of payment" to be an advertisement, and it asserts the subject faxes do not qualify because they "state only that Plaintiff would receive compensation *if it successfully qualified for* and completed the NHC survey." (IQVIA Opp. Br. at 12 (emphasis in

3

original).) IQVIA makes up the "automatic" requirement out of whole cloth; the Third Circuit never made such a holding, in *Olson* or elsewhere. The argument is baseless.

The facts in *Olson* are indistinguishable from this case. The faxes at issue in *Olson* offered payments (which the defendant there too called "honorariums") if recipients completed surveys. *See Olson*, 959 F.3d at 561. "An offer of payment," the court held, "transforms the solicitation of responses to market surveys into advertisements." *Id.* at 562. In this case, each fax plainly offers the recipient $30 or $35 for completing a survey and promises that participation is "guaranteed" or that "99% of respondents qualify for the survey." (Subject Faxes, ECF 176-2 at Lyngaas Exs. 16–20.) IQVIA's contention that the faxes do not contain offers of payment is belied by the text of the faxes themselves. As a matter of law in this Circuit, they are advertisements under the TCPA.

## II. The Undisputed Evidence Confirms that Plaintiff Received Impact Network Faxes on a Standalone Fax Machine using an Analog Telephone Line.

IQVIA produced the transmission reports generated by Odyssey Services (the fax broadcasting service it hired), which reflect faxes were "Sent" to (248) 473-7490 on the following dates in 2017: (1) February 10, (2) June 13, (3) August 3, and (4) August 08. (*See* Snyder Exs. 2c, 3b, 4b, 5b, ECF 176-1.) Plaintiff produced bills from the telecom company TDS for the analog line associated with the same number, spanning the same period. (*See, e.g.*, Lyngaas Ex. 5 (for period from Feb. 22 to Mar. 21, 2017; Ex. 6 (for period from Aug. 22 to Sept. 22, 2017), ECF 176-2.) Dr. Lyngaas testified (as corporate representative) that the office maintained the analog line specifically for faxing and for no other purpose; and Plaintiff produced the receipt for

4

the HP stand-alone fax machine purchased in November 2015. (*See* Dep. Tr. of Dr. Lyngaas (Aug. 6, 2021) ("Dr. Lyngaas Tr.") at 78:19–79:09, ECF 176-2.)

In a desperate effort to gin up a material dispute, IQVIA argues this Court should deny summary judgment because Dr. Lyngaas vacillated on whether the faxes were received on the HP stand-alone fax machine, or a Brother stand-alone fax machine it replaced. (IQVIA Opp. Br. at 14.) But that point does not matter; whether Plaintiff received the faxes on one stand-alone fax machine or another does not alter that Plaintiff is entitled to judgment as a matter of law against IQVIA for sending the faxes. The uncontested evidence shows that Plaintiff had a stand-alone fax machine connected to Plaintiff's fax number when IQVIA sent the faxes, that they printed automatically upon receipt, and Dr. Lyngaas reviewed them. (Dr. Lyngaas Tr. at 254:10–258:20, 266:04–267:18, 270:18–271:17, 272:06–16, ECF 176-2.)

IQVIA insists "there is disputed evidence regarding whether Plaintiff received the faxes over a 'regular telephone line' as the TCPA requires," pointing to Plaintiff's testimony that the office partially converted to VoIP in 2013. (IQVIA Opp. at 14.) And it contends that Plaintiff's expert, Christopher Lee Howard, "conceded that it is unclear whether Plaintiff's fax equipment was connected to a traditional analog telephone line or to a VoIP service at the time Plaintiff allegedly received the faxes." (*Id.* at 6.) IQVIA grossly mischaracterizes the record testimony.

When asked whether Plaintiff switched all lines to VoIP in 2013, Dr. Lyngaas testified that he "switched the phone lines and left an analog line due to the fact that we had a tendency to lose power," and "an analog line doesn't require power." (Dr.

5

Lyngaas Tr. at 75:13–21, ECF 176-2.) Dr. Lyngaas clearly explained that the office did not fully transition to VoIP until 2018 and had retained the separate analog line for fax uses until then. (*Id.* at 77:19–78:23; 78:19–79:09.) Mr. Howard did not concede that it was uncertain whether the fax machine was connected to an analog line, as IQVIA asserts. (IQVIA Opp. Br. at 6.) Instead, Mr. Howard stated that he had not examined Plaintiff's fax machine and did not have adequate information to respond. (Dep. of Christopher Lee Howard (Oct. 11, 2022) at 290:06–19, ECF 214-12.)

IQVIA's strained contention that Plaintiff's stand-alone fax machine is not really a fax machine brings to mind René Magritte's "The Treachery of Images," the classic surrealist painting that shows an image of a pipe with the words "Ceci n'est pas une pipe" ("*This is not a pipe*") written underneath.[1] Fortunately, courts have not embraced surrealism as a legitimate tool for decision-making (at least expressly). Based on the record in this case, the only reasonable and evidence-based conclusion a jury could reach is that Plaintiff received the four Impact Network Faxes on a traditional, stand-alone fax machine connected to an analog telephone line.

**III.    IQVIA Has No Evidence to Contradict Plaintiff's Testimony that It Did Not Give IQVIA Prior Express Invitation or Permission.**

IQVIA admits it bears the burden to prove at trial that Plaintiff gave IQVIA prior express invitation or permission to send a fax advertisement. (IQVIA Opp. Br. at 15.) *See Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017). As IQVIA also must concede, Dr. Lyngaas testified as the corporate representative, and the

---

[1]    The oil painting is on display at the Los Angeles County Museum of Art. *See* https://www.lacma.org/magritte-index

6

office manager's testimony confirms, that Plaintiff did not give IQVIA permission to send faxes or at any point provide its fax number to IQVIA. (*See* Lyngaas Dep. Tr. at 201:22–202:07, 237:09–19, 262:11–263:03, ECF 176-2; Dep. Tr. of Denise O'Brien (Aug. 5, 2021) ("O'Brien Dep. Tr.") at 117:03–06, 204:07–205:02, ECF 176-5.) Both witnesses testified that it was office policy not to give out the office fax number except for patient-related matters, and not to give permission for fax advertisements. (Lyngaas Dep. Tr. at 306:07–307:04; O'Brien Dep. Tr. at 45:14–47:02, 204:07–205:02.)

IQVIA argues that because the office manager testified that she would give out the fax number for "business-related" reasons, Plaintiff must have expressly consented to receive IQVIA's faxes, pointing to the Third Circuit's decision in *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3d Cir. 2020). In *Cephalon*, however, the court found the evidence was undisputed that plaintiff had met with drug representatives on multiple occasions and voluntarily provided them with the office fax number. *See id.* at 619–20. In this case, IQVIA has introduced no evidence whatsoever that it ever contacted Plaintiff before sending the faxes or that Plaintiff voluntarily provided IQVIA with its fax number.

IQVIA argues that the testimony of Plaintiff's corporate representative and office manager "do not meaningfully dispute IQVIA's affirmative evidence of its comprehensive consent practices." (IQVIA Opp. at 16.) To the contrary, as separately discussed in Plaintiff's motion for class certification, IQVIA did not establish that it ever got consent for the advertising faxes at issue from anyone, ever. After all, it apparently thought—and still does despite *Optum*—that the faxes are not

7

advertisements subject to the TCPA's requirements. And unlike the formerly separate company that is now part of IQVIA that was responsible for the faxes at issue in *Fischbein*, IQVIA here did **not** have a practice of contacting providers about the National Healthcare Census before sending these faxes. Rather, it only vicariously relies on actions SK&A, the seller of the target list, took to "verify" fax numbers.

At the time IQVIA sent the faxes, SK&A was an entirely separate company and legal entity. Its contract with IQVIA specifically disclaimed having obtained permission to send fax advertisements under the TCPA. And Plaintiff's name is not listed on any of the SK&A spreadsheets that IQVIA produced. Nor is Plaintiff listed on the lists of providers who agreed to participate in the survey. IQVIA witnesses admitted there is no other source from which Defendant had obtained prior express invitation or permission to send these faxes. (*See generally* Plaintiff's Br. in Supp. of its Mot. for Summ. J. at 5–6, ECF 176.)

IQVIA's arguments fail to reveal a genuine issue of material fact. Even if IQVIA could establish that the company had a general policy of securing consent (and it cannot), there is no evidence that IQVIA did anything to ensure that Plaintiff had given prior express invitation or permission to receive the Impact Network Faxes at issue. IQVIA has no records to show that IQVIA had ever contacted Plaintiff or other recipients before sending the faxes. And IQVIA cannot prevail on consent with zero evidence that it happened here. After all, the issue is an affirmative defense on which IQVIA bears the burden of proof. *See Daubert*, 861 F.3d at 390.

8

## IV. IQVIA Acted Willfully or Knowingly.

The Court has discretion to impose treble damages if the defendant's violation was "willful[ ] or knowing[ ]." 47 U.S.C. § 227(b)(3)(C). Here, the evidence establishes that IQVIA sent the faxes to Plaintiff while knowing that it had undertaken no effort to contact Plaintiff beforehand to obtain prior express invitation or permission. That is sufficient to demonstrate that IQVIA acted willfully and knowingly within the meaning of the TCPA. *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 571 (E.D.Pa. 2019) ("[T]he court has discretion to award treble damages where the defendant knowingly committed the offense the TCPA prohibits, *i.e.*, sending a fax without consent.") (citing cases).

IQVIA points to internal communications among its employees asserting that the Impact Network faxes were not advertisements. (IQVIA Opp. Br. at 8-9.) None of those communications states, suggests, or even addresses that IQVIA had obtained prior express invitation or permission from Plaintiff or any other targeted fax recipient. The absence of any discussion of consent is telling. IQVIA's internal belief regarding the legal characterization of the faxes does not negate the undisputed fact that it knowingly sent them without consent. Finally, IQVIA mistakenly argues that Plaintiff must prove that IQVIA acted knowingly or willfully as an element of liability. (IQVIA Opp. Br. at 1.) That is false. Plaintiff is entitled to summary judgment against IQVIA regardless of whether this Court agrees that the undisputed evidence demonstrates IQVIA acted knowingly or willfully, as a matter of law.

9

## V. The Court Should Enter a Permanent Injunction Prohibiting IQVIA from Sending Facsimile Advertisements to Plaintiff.

The TCPA expressly authorizes injunctive relief in addition to statutory damages. 47 U.S.C. § 227(b)(3)(A), (C). Plaintiff's Complaint specifically requests such relief. *See* Doc. 1 at 13 (prayer for relief seeking an injunction barring future fax advertisements). A plaintiff seeking a permanent injunction must satisfy a four-factor test. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The plaintiff must demonstrate: (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id*. Each factor is satisfied here.

First, if the Court determines that IQVIA violated the TCPA, Plaintiff will have succeeded on the merits. Second, the continued risk of receiving unsolicited fax advertisements constitutes irreparable harm. The TCPA was enacted to prevent invasions of privacy and interference with the use of fax equipment, harms that are ongoing and not fully compensable by money damages alone. *See Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 569 (E.D. Pa. 2019) ("Much the same way a telemarketing call invades one's right to be left alone, an unsolicited fax intrudes upon the right to be free from nuisance.") (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 500 (E.D. Pa. 2006)).

Third, the balance of hardships favors Plaintiff. An injunction would merely require IQVIA to refrain from faxing advertisements to Plaintiff, conduct the statute

10

already prohibits absent express permission. The TCPA does not permit fee shifting, further underscoring the inadequacy of legal remedies. Finally, the public interest favors enforcement of the TCPA and the prevention of future unlawful fax transmissions.

Plaintiff has made clear that it does not wish to receive any future facsimile advertisements from IQVIA, yet IQVIA has never agreed to refrain from sending them. "A party can generally obtain injunctive relief for past conduct that is likely to recur; the wrongdoer cannot avoid an injunction by voluntarily ceasing its illegal conduct." *Fed. Trade Comm'n v. Shire ViroPharma, Inc.*, 917 F.3d 147, 157 (3d Cir. 2019).

Instead, IQVIA continues to assert that its transmissions were lawful because they were not advertisements, that even if advertisements they were sent with Plaintiff's express permission, and that even if advertisement sent without express permission, Plaintiff cannot prove he receives them on a "telephone facsimile machine." Those positions are not confined to past conduct. They reflect IQVIA's asserted entitlement to continue sending similar faxes in the future. Where a defendant maintains that its conduct is lawful and refuses to disclaim future transmissions, the risk of recurrence is sufficient to warrant an injunction. Accordingly, the Court should exercise its discretion and enjoin IQVIA from sending any facsimile advertisements to Plaintiff.

## CONCLUSION

For all the reasons set forth in Plaintiff's briefing in support of summary judgment and in support of renewed class certification, Plaintiff respectfully requests

that this Court grant Plaintiff's motion for summary judgment in Plaintiff's favor and against Defendant IQVIA for violating the Telephone Consumer Protection Act.

                         Respectfully submitted,

                         By: /s/ Barry J. Blonien

| | |
|---|---|
| Richard Shenkan (PA 79800) | Phillip A. Bock (pro hac vice) |
| **Shenkan Injury Lawyers, LLC** | David M. Oppenheim |
| P.O. Box 7255 | Barry J. Blonien (pro hac vice) |
| New Castle, PA 16107 | **Bock Hatch & Oppenheim, LLC** |
| (412) 716-5800 | 203 N. La Salle St. Ste. 2100 |
| rshenkan@shenkanlaw.com | Chicago, IL 60601 |
| | (312) 658-5501 |
| Lawrence F. Stengel | service@classlawyers.com |
| **Saxton & Stump, LLC** | |
| 280 Granite Run Dr., Ste. 300 | |
| Lancaster, PA 17601 | |
| (717) 556-1080 | *Counsel for Plaintiff* |
| lfs@saxtonstump.com | *and the Putative Class* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 4, 2026, he caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which automatically notifies each counsel of record and provides a link for downloading a copy of the document.

                         By: /s/ Barry J. Blonien