# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN J. LYNGAAS, D.D.S., P.L.L.C.** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-2370** |
| **v.** | : | |
| | : | |
| **IQVIA, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    MARCH 17, 2026

## MEMORANDUM OPINON

**INTRODUCTION**

This case has a protracted procedural history well-known to the parties. Briefly, on May 20, 2020, Plaintiff Brian J. Lyngaas, D.D.S., P.L.L.C., ("Plaintiff"), filed this putative class action (ECF 1), and in conjunction, a motion for class certification, (ECF 2), pursuant to Federal Rule of Civil Procedure, ("Rule"), 23, against Defendant IQVIA, Inc., ("Defendant" or "IQVIA"), averring that Defendant violated the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227 *et seq.*, when sending Plaintiff and other purportedly similarly-situated healthcare provider class members unsolicited fax advertisements without their prior express invitation or permission. (ECF 1). On February 28, 2024, a hearing on the motion for class certification was held. By Memorandum Opinion and Order dated July 9, 2024, Plaintiff's motion for class certification was denied on the basis that the proposed class did not meet the threshold ascertainability requirement of Rule 23(b)(3). (*See* ECF 162, 163). On July 23, 2024, Plaintiff filed with the United States Court of Appeals for the Third Circuit, ("Third Circuit"), a petition for permission to appeal

pursuant to Rule 23(f) and 28 U.S.C. § 1292. *See Lyngaas v. IQVIA Inc.*, No. 24-8028 (3d Cir. July 23, 2024).[1]

At Plaintiff's request, by Order dated September 16, 2025, this Court stayed this action (ECF 181), pending the disposition of Plaintiff's appeal and the Third Circuit's ruling on *Steven A. Conner, DPM, P.C. v. Fox Rehab. Servs., P.C.*, No. 23-1550, 2025 WL 289230, at *1 (3d Cir. Jan. 24, 2025), which Plaintiff contended could impact this case. (ECF 181).  On October 4, 2024, the Third Circuit denied Plaintiff's Rule 23(f) appeal. *See Lyngaas*, No. 24-8028, D.E. 16 (3d Cir. Oct. 4, 2024).

On February 10, 2025, the parties filed a joint status report advising the Court that the *Conner* decision had been issued on January 24, 2025 and requesting that the stay be lifted. (ECF 186).  By Order dated February 11, 2025, the parties were ordered to file supplemental briefs regarding the applicability, if any, of *Conner* on the Court's decision to deny class certification in this case. (ECF 187).  Both parties filed briefs supporting their respective positions. (ECF 188, 190, 191, 193, 197, 198, 201).  By Memorandum Opinion and Order dated December 12, 2025, this Court lifted the stay and held that *Conner* decision presented no basis or reason to modify its previous Order denying class certification. (ECF 207, 208).

Plaintiff has not filed an amended complaint.  Instead, pending before the Court are, *inter alia*, Plaintiff's renewed motion for class certification of a new distinct class filed pursuant to Rule 23(b)(3) and/or Rule 23(c)(4) on March 11, 2025, (ECF 196) (redacted); (ECF 200) (sealed),[2] and

---

[1]     Due, *in part,* to a stay on the deadlines for dispositive motions, the parties' cross motions for summary judgment, which were filed without responses on September 9, 2024, remain pending. (ECF 174, 176, 177, 180).  These motions became ripe on January 16, 2026, when the parties filed their respective responses. (ECF 210, 213, 216, 217).

[2]     The parties represent that many documents before the Court contain confidential business information or other proprietary data.  Thus, their briefing was filed under seal with accompanying redacted versions accessible to the public.  For ease of reference, this Court will hereinafter cite to the sealed version

Defendant's response in opposition to the renewed motion for class certification. (ECF 214) (redacted); (ECF 218) (sealed).[3]   Also before this Court is Plaintiff's reply to Defendant's opposition on February 14, 2026. (ECF 230) (sealed). This matter has been fully briefed and is now ripe for disposition. For the reasons set forth, Plaintiff's renewed motion for class certification is denied.

**BACKGROUND**

The facts relevant to the renewed motion for class certification are well-known to the parties and are summarized from the operative complaint, (ECF 1), as follows:[4]

> The Telephone Consumer Protection Act, ("TCPA"), provides, *in part,* that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Under the TCPA, an "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* at § 227(a)(5).

> On May 20, 2020, Plaintiff, a Michigan dental practice, filed this class action against Defendant IQVIA, a Delaware corporation with its principal place of business in Plymouth Meeting, Pennsylvania, averring that it violated the TCPA. (ECF 1). Defendant is a global provider of information, innovative technology solutions, and contract research services, previously known as IMS Health. Specifically, Plaintiff avers that between 2016 and 2018, Defendant sent a one-page fax inviting more than 150,000 healthcare providers to participate in its online National Healthcare Consensus, ("NHC"), survey. Plaintiff contends that in 2017, he received four such faxes and had not consented to receive the NHC faxes.

---

of each parties' filings. In effort to refrain from including confidential business information in this Opinion, the Court refers generally to the exhibits or information filed under seal throughout.

[3]     Defendant filed a duplicate response in opposition to Plaintiff's renewed motion for class certification under seal at ECF 234.

[4]     The facts herein are primarily from the July 9, 2024 Opinion, (ECF 162), which relied on the parties' statements of fact, briefs, the exhibits attached thereto, and the evidence presented at the hearing on Plaintiff's initial motion for class certification.

Defendant's NHC faxes offered healthcare providers honorariums of $15 to $150 for answering the online NHC survey, with the ultimate goal of obtaining data to sell to third parties. Defendant used the brand name "ImpactNetwork" for NHC recruitment. Defendant relied on the third party, Odyssey Services, Inc., ("Odyssey"), to send its NHC faxes to purportedly more than 130,000 unique fax numbers, which had been extracted from Defendant's database.

Defendant's database was derived from varied sources. Significantly, in 2015, Defendant acquired SK&A, Inc., ("SK&A"), which maintained a telephone verified database comprised of individuals who participated in surveys aimed at verifying contact information and obtaining permission to utilize the same in direct marketing. SK&A's database appears to have also consisted of data licensed from another company, ImpactRx (eventually acquired by IQVIA), for use in direct marking. Despite this, certain SK&A documents and its website provide that SK&A did not obtain affirmative consent from all individuals whose contact information it maintained.

Nonetheless, Defendant licensed the data from SK&A with the understanding that it could be used to send faxes to the healthcare providers and in the summer of 2016, integrated SK&A's database into its own without a document trail. Only three datasets containing a small portion of the SK&A database existed at the time this action was filed, and Defendant lacks the means to determine whether a fax number was sourced or not from the SK&A database. (*See* ECF 115 at 18).

In addition to the SK&A data, Defendant's database also consisted of healthcare providers who consented to receiving faxes from IQVIA in a variety of ways, including through IQVIA's website, oral conversations and emails with IQVIA representatives, and prior NHC participation. (*See* ECF 115 at 15-18). Defendant was not required to and did not record all emails and conversations through which healthcare providers consented to receive faxes.

To invite participation in the NHC survey, Defendant engaged third party Odyssey to send faxes to healthcare professionals. After attempting to send NHC faxes to the fax numbers contained within its database, Defendant would often receive documents from Odyssey about the transmission, referred to as Odyssey Job Reports, ("Job Reports"). However, sometime in September 2018, Odyssey suffered a ransomware attack that erased all of its records, including the records Odyssey had previously maintained related to its work for Defendant during the purported class period. Due to this ransomware attack Odyssey was not able to produce any Job Reports in this action, and its Chief Executive Officer could not verify the Job Reports issued during the at-issue period to determine whether they reliably reflect successful transmission of faxes. (*See* ECF 162 at 9). Defendant, however, produced 32 Job Reports it located within its network and its employees' emails.

The Job Reports are spreadsheets.  The parties largely focus on the "Summary" and "Detail" sheets.  According to the expert testimony offered, the "Summary" sheet shows that a given number of fax transmissions were sent to recipients who appear in the "Detail" sheet.  (*See* ECF 162 at 7-8).  The "Detail" sheet contains columns with data regarding, *inter alia*, contact information, a fax outcome code, and a fax transmission outcome.  Two of the 32 Job Reports contain no contact information in the "Detail" sheet.  (*Id.* at 12).

Most pertinent on the "Detail" sheet is the outcome code "S," defined in the Job Reports legend to mean "SENT."  In voluminous briefing and at the hearing on Plaintiff's initial motion for class certification, (*see* ECF 164), the parties presented conflicting expert testimony as to the meaning of outcome code "S" or "SENT." Ultimately, this Court concluded that the Job Reports do not sufficiently show whether faxes were actually sent and/or who actually received Defendant's faxes. (*See* ECF 162 at 7-12).  Based on the totality of evidence presented at the hearing, this Court denied Plaintiff's initial motion for class certification because Plaintiff failed to meet its burden as to the threshold class certification requirement of ascertainability.  (ECF 162, 163).

Plaintiff's initial motion for class certification proposed the following class definition:

> All persons (1) who were sent one or more facsimiles between September 29, 2026, and August 28, 2018, inviting them to participate in Impact Network's "National Healthcare Census" in exchange for monetary payment; (2) who did not participate in and had never participated in the "National Healthcare Census" survey; and (3) as to whom Defendant has not produced evidence showing SK&A verified the person's fax number.

(ECF 118 at 2).

Following the Third Circuit's dismissal of the appeal denying class certification and this Court's Order finding that the Third Circuit ruling in the *Conner* case did not warrant a different outcome in this case, Plaintiff now renews the motion for class certification based on the following amended class definition:

> All persons sent one or more invitations by fax during the period from September 2016 to September 2018 offering from $15 to $150 to participate in Impact Network's "National Healthcare Census," as reflected by a "SENT" (not a "FAIL") disposition code on one of the 30 Odyssey Job Reports bates numbered IQV_00000310.xls, IQV_00000312.xls, IQV_00000314.xls, IQV_00000316.xls, IQV_00000320.xls, IQV_00000322.xls, IQV_00000324.xlsx, IQV_00000326.xls, IQV_00000328.xls, IQV_00000330.xls, IQV_00000332.xls, IQV_00000334.xls, IQV_00000336.xls,

IQV_00000338.xls,    IQV_00000340.xls,    IQV_00000344.xls,
IQV_00000346.xls,    IQV_00000348.xls,   IQV_00000350.xlsx,
IQV_00000352.xls,    IQV_00000354.xls,    IQV_00000356.xls,
IQV_00000358.xls,    IQV_00000359.xls,    IQV_00000360.xls,
IQV_00000361.xls,    IQV_00000362.xls,    IQV_00000363.xls,
IQV_00000364.xlsx, and IQV_00000365.xlsx, but excluding all persons whose fax number appears in Defendant's list of participating healthcare providers produced as IQV_00000473.xls.

(ECF 200 at 1).

**LEGAL STANDARD**

Rule 23 governs the certification of class actions in federal court. Rule 23(c)(1)(C) provides the basis by which a party may move for class certification after initially being denied class certification. It provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Third Circuit instructs that a renewed motion for class certification be evaluated under the "usual Rule 23 standard." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020) (citation omitted). Thus, "[p]laintiffs can succeed on a renewed motion for class certification if they more clearly define their proposed class . . . ." *Id.*

A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013); *see also Marcus v. BMW of N. Am.*, 687 F.3d 583, 590 (3d Cir. 2012). However, the requirement of ascertainability is "an essential prerequisite of a class action[.]" *Id.* at 592. Thus, "[c]lass certification is proper only when the 'the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)' are satisfied, as well as the prerequisite that the class be ascertainable." *Conner*, 2025 WL 289230, at *12 (quoting *Marcus*, 687 F.3d at 592-94).

6

"A party seeking class certification must affirmatively demonstrate his compliance with" Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.*, 568 U.S. at 465 (quoting *Dukes*, 564 U.S. at 351). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). The same standard applies to the question of ascertainability, whereby "a plaintiff must show, by a preponderance of the evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus*, 687 F.3d at 593).

> To satisfy the Rule 23(a) requirements:
>
> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus*, 687 F.3d at 590-91 (citations omitted). If the plaintiff satisfies Rule 23(a), the plaintiff still must satisfy the "requirements of either Rule 23(b)(1), (2), or (3)." *Id.* at 590 (citing Fed. R. Civ. P. 23(a)-(b)). Here, Plaintiff seeks certification of the purported class pursuant to Rule 23(a) and 23(b)(3), or in the alternative, Rule 23(c)(4). Rule 23(b)(3) permits certification when the court finds that "questions of law or fact common to class members predominate over any

questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

**DISCUSSION**

As noted, following a hearing, this Court previously undertook a "rigorous analysis of the evidence" and held that Plaintiff failed to meet the threshold requirement of ascertainability. Undeterred, Plaintiff again moves for class certification pursuant to Rule 23(a) and 23(b)(3), or in the alternative, Rule 23(c)(4). As noted, Plaintiff proposes an amended class definition consisting of:

> All persons sent one or more invitations by fax during the period from September 2016 to September 2018 offering from $15 to $150 to participate in Impact Network's "National Healthcare Census," as reflected by a "SENT" (not a "FAIL") disposition code on one of the 30 Odyssey Job Reports bates numbered IQV_00000310.xls, IQV_00000312.xls, IQV_00000314.xls, IQV_00000316.xls, IQV_00000320.xls, IQV_00000322.xls, IQV_00000324.xlsx, IQV_00000326.xls, IQV_00000328.xls, IQV_00000330.xls, IQV_00000332.xls, IQV_00000334.xls, IQV_00000336.xls, IQV_00000338.xls,IQV_00000340.xls, IQV_00000344.xls, IQV_00000346.xls, IQV_00000348.xls, IQV_00000350.xlsx, IQV_00000352.xls, IQV_00000354.xls, IQV_00000356.xls, IQV_00000358.xls, IQV_00000359.xls, IQV_00000360.xls, IQV_00000361.xls, IQV_00000362.xls, IQV_00000363.xls, IQV_00000364.xlsx, and IQV_00000365.xlsx, but excluding all persons whose fax number appears in Defendant's list of participating healthcare providers produced as IQV_00000473.xls.

(ECF 200 at 1).

"[A]s an essential prerequisite to class certification, [a] plaintiff must show by a preponderance of the evidence that the class is ascertainable." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015) (explaining that the ascertainability "inquiry . . . is independent from the other requirements of

8

Rule 23."). "To satisfy that requirement, '[p]laintiffs must show that '(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 130 (3d Cir. 2023) (alteration in original) (*Hargrove*, 974 F.3d at 469-70).

Instead of repeating the law and analysis set forth in the Court's July 9, 2024 Opinion (*see* ECF 162), denying Plaintiff's initial motion for class certification on ascertainability grounds, this Court will incorporate by reference the analysis and law herein. Notably, Plaintiff seeks to add to that record additional testimony not provided at the hearing — that of Defendant's former employee deposed once before the initial motion for certification and again after — and its own analysis of the data contained within the Job Reports, which is discussed below.

In its renewed motion for class certification, Plaintiff argues that its amended class definition remedies this Court's ascertainability concerns because Plaintiff now proposes to define the class, *inter alia*, as persons sent NHC faxes as explicitly reflected in select Job Reports, rather than simply as individuals sent faxes.[5] In so arguing, Plaintiff relies on Third Circuit case law, specifically, *Hargrove* and *Conner*. Plaintiff also argues that its amended class definition further responds to this Court's ascertainability concerns insofar as it omits the two Job Reports that lacked recipient names and drops the criteria that those whose fax numbers came from SK&A data are not class members.

---

[5]    Plaintiff now defines its proposed class, in relevant part, as follows: "All persons sent one or more invitations by fax . . . as reflected by a "SENT" (not a "FAIL") disposition code on one of the 30 Odyssey Job Reports bates numbered . . . ." (ECF 200 at 1). *Cf.* (ECF 118 at 1) (Proposing defined class as, *in part*: "All persons: (1) who were sent one or more facsimiles…").

In response, Defendant counters that Plaintiff's proposed changes to its class definition do not address the issues raised in the Court's prior Opinion denying class certification nor do they render Plaintiff's claims appropriate for class treatment.  This Court agrees.

It is well-settled that "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593.  In *Marcus,* the Third Circuit explained that "if class members cannot be ascertained from a defendant's records, there must be a 'reliable, administratively feasible alternative,' but [ ] cautioned 'against approving a method that would amount to no more than ascertaining by potential class members' say so." *Carrera*, 727 F.3d at 304 (quoting *Marcus*, 687 F.3d at 594). Here, the ascertainability question is whether each class member received an unsolicited NHC fax. Plaintiff contends the class is ascertainable by putting forth the argument that the class can use the Job Reports that contain contact information, which purportedly track successful transmissions of NHC faxes.  This argument is largely indistinguishable in substance from the argument this Court rejected, in an Opinion affirmed by the Third Circuit, based on this Court's finding that the Job Reports do not reliably reflect whether faxes were successfully sent.  The additional arguments made by Plaintiff in the renewed motion for class certification fail to compel a different outcome. Nevertheless, Plaintiff's arguments are addressed in turn.  *See Hargrove*, 974 F.3d at 477 (holding the "usual Rule 23 standard" applies to renewed motions for class certification).

To urge this Court that class members can be ascertained from the Job Reports, Plaintiff points to the deposition testimony of a former employee of Defendant.[6]  The former employee was deposed prior to the initial motion for class certification and again subsequently, at his own request.

---

[6]     For the reasons stated *supra* note 2, this Court does not quote from the at-issue deposition testimony or reveal its specific substance.

(*See* ECF 200 at 13) (citing ECF 200, Ex. A at 26:12-21). Plaintiff's present argument relies only on the second deposition testimony, which Defendant argues contains inconsistent testimony when read in tandem with the first deposition transcript. (*See* ECF 234 at 18-19). Defendant further notes seemingly meritorious credibility concerns about the former employee witness, including the witness's personal bias against IQVIA. (*Id.*).

The proffered testimony of the former employee witness does not resolve the reservations this Court maintains about the reliability of the Job Reports and Plaintiff's resultant inability to show that it can be used to ascertain members of its class. The lay person opinions of the former employee witness are also insufficient to outweigh or support the expert opinions submitted by both parties, which underly this Court's prior ascertainability holding.[7] After hearing the testimony from experts on both sides and considering their reports, this Court concluded that the Plaintiff's expert's testimony creates serious doubts as to what the Job Reports actually report and who the actual class members are. The former employee's testimony offers no reason to disturb said conclusion here.

Plaintiff further argues that its amended class definition conforms with Third Circuit case law in *Hargrove* and *Conner*. (ECF 200 at 7-8) (citing *Conner*, 2025 WL 289230, at *12; *Hargrove*, 974 F.3d at 477). Plaintiff is mistaken as those cases do not salvage Plaintiff's renewed motion for class certification.

In *Hargrove*, the Third Circuit determined the standard applicable to renewed motions for class certification. 974 F.3d at 475-77. It held that renewed motions for class certification are to

---

[7]    To argue that the Job Reports are reliable, Plaintiff also presents its own analysis of the Job Reports by, *inter alia*, cross-referencing the Job Reports data with Plaintiff's own data reflecting the time of its receipt of NHC faxes. (ECF 200 at 10-18). Being that the Court has already heard and analyzed expert opinions on the issue, the Court finds it unnecessary to engage with Plaintiff's own analysis of the Job Reports.

11

be treated "like any other for class certification," and that "[p]laintiffs can succeed on a renewed motion for class certification if they more clearly define their proposed class[.]" *Id.* at 477 (internal citations omitted).  The *Hargrove* Court rejected the proposition that renewed motions be subject to the more stringent motion for reconsideration standard, reasoning that the language of Rule 23(c)(1)(C)[8] permits parties to relitigate the class certification issue throughout the case, without placing contingencies on what may give rise to a renewed motion for class certification (*i.e.*, a change in law or new evidence).  *Id.* at 476.  That is, Rule 23(c)(1)(C) "allows for multiple bites at the apple throughout the litigation." *Id.*  The Third Circuit further explained that there is "no reason why plaintiffs who cabin more clearly their class, and meet the other Rule 23 requirements, should be barred from succeeding on a renewed motion."  *Id.* at 476-77.

Although Plaintiff has attempted to refine its definition of a class, its approach contravenes the purposes for which renewed motions for class certifications are permitted.  Plaintiff's amended class definition relies more heavily on the very documents this Court has already deemed unreliable; *i.e.*, the Job Reports.  As the Court has already identified the Job Reports' deficiencies, Plaintiff may not now enjoy a second bite of the apple simply by doubling down on its theory that the Job Reports are reliable.  Even though the amended class definition defines what Plaintiff means by a sent fax, the issue remains that there is no support for the proposition that the data within the Job Reports actually shows successful transmission of faxes.  Thus, Plaintiff's argument that its amended class definition is aligned with *Hargrove* is incorrect, as the amended class definition fails to "cabin more clearly [its] class."  *Hargrove*, 974 F.3d at 476-77.

This Court has also previously explained that *Conner* is a non-precedential Third Circuit case that considered, *inter alia*, a TCPA plaintiff's appeal of a district court's denial of his class

---

[8]      As stated *supra* at p. 6, Rule 23(c)(1)(C) provides that an order ruling on class certification may be altered or amended before final judgment.

certification motion. 2025 WL 2829230, at *1. There, the Third Circuit found that a district court erred in holding that the plaintiff's proposed class was not ascertainable but affirmed its denial of class certification on predominance grounds. 2025 WL 289230, at *12, *14. The plaintiff defined its class as individuals whose fax numbers were sent one or more faxes "identified as 'successful' transmission on the fax transmission detail reports from [the defendant's third-party fax distributor]." *Id.* at *12 (internal citations omitted).

The Third Circuit reasoned that "[b]ecause the class definition does not require proof that the faxes were in fact transmitted successfully, the class is currently and readily ascertainable through a reliable, administratively feasible mechanism" — *i.e.*, by reviewing the transmission logs and identifying which faxes were identified as successfully transmitted. *Id.* It found the transmission log review method reliable because the defendant "failed to identify evidence suggesting that any faxes were never *sent*" and the plaintiff stated that the persons or business entities to whom the fax numbers belong could be identified through documents produced in litigation and subpoenas to phone companies. *Id.* (internal citations omitted).

This case is readily distinguishable from *Conner*. Like in *Conner*, Plaintiff's amended class definition relies exclusively on the Job Reports and, effectively, does not require proof that the faxes were in fact successfully transmitted. However, unlike in *Conner*, Defendant has presented persuasive evidence that the Job Reports do not reliably show that NHC faxes were actually sent. Such evidence cannot now be ignored for ascertainability purposes. Unlike in *Conner*, Plaintiff has not here presented an administratively feasible method to identify potential class members who were actually sent NHC faxes. Given that Defendant's database of healthcare providers to whom it may have sent NHC faxes appears significant in size, Plaintiff's failure to identify *any* method, aside from the Job Reports, to identify persons who were sent unsolicited

13

NHC faxes renders its proposed class not ascertainable.[9] *See Bello v. Beam Glob. Spirits & Wine, Inc.*, No. CIV. 11-5149, 2015 WL 3613723, at *11 (D.N.J. June 9, 2015) (holding plaintiffs failed to meet the ascertainability requirement because they did not offer "a suitable method by which the Court could identify class members with any reliability").

Finally, Plaintiff's arguments about the omissions in its amended class definition fare no better. While including the (previously excluded) healthcare providers whose data came from SK&A's database eliminates the need for extensive fact-finding to sift through Defendant's data and determine what portions of it came from SK&A, doing so would effectively include, as putative class members, healthcare providers who may have consented to receive the disputed faxes. As this Court has previously stated, members of Plaintiff's class would have had to receive an "unsolicited advertisement," *i.e.*, an advertisement without their consent, in order to show an injury to support a TCPA claim against Defendant. *See Hydrogen Peroxide*, 552 F.3d at 311 (vacating class certification where it appeared that "many [class members]—up to one-third of the entire class—"did not suffer injury). Thus, Plaintiff cannot certify a class that includes those to whom Defendant sent faxes pursuant to their consent. Likewise, omitting the two Job Reports that do not contain contact information does nothing to render the fax transmission data within the Job Reports more reliable.

Accordingly, while the proposed class definition in the renewed motion differs slightly from the one Plaintiff defined in its initial motion for class certification, the modifications do not alter this Court's conclusions. Therefore, this Court finds that class ascertainability, an essential

---

[9]     Relying on this Court's holding in *Fischbein v. IQVIA, Inc.*, 2025 WL 1616793, at *8 (E.D. Pa. June 5, 2025), Defendant argues that Plaintiff's amended class definition fails for the additional reason that Plaintiff made no attempt to identify a mechanism to determine whether a potential class member received a fax on a "telephone facsimile machine" as opposed to an online fax service. (ECF 234 at 19-21). This Court accepts Defendant's argument as a likely alternative basis to justify the instant holding.

prerequisite for class certification, has not been met and, thus, certification of Plaintiff's proposed class is improper.[10]

**CONCLUSION**

For the reasons set forth, Plaintiff's renewed motion for class certification is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[10]    While the Third Circuit appears to have only applied ascertainability as a threshold requirement in motions to certify Rule 23(b)(3) classes, it has not expressly limited the requirement. Based on the rationale underlying the requirement, *see Marcus*, 687 F.3d at 592-595, this Court understands the requirement as equally applicable to Plaintiff's proposed Rule 23(c)(4) class. Because this Court finds Plaintiff has failed to meet the threshold requirement of ascertainability, it thus does not reach any Rule 23(c)(4) analysis.