## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN J. LYNGAAS, D.D.S., P.L.L.C.,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | **NO. 20-2370** |
| **v.** | : | |
| | : | |
| **IQVIA, INC.,** | : | |
| *Defendant.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                   MARCH 30, 2026

## MEMORANDUM OPINON

**INTRODUCTION**

Plaintiff Brian J. Lyngaas, D.D.S., P.L.L.C., ("Plaintiff"), filed this class action against Defendant IQVIA, Inc., ("Defendant" or "IQVIA"), asserting that Defendant violated the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227 *et seq.*, by sending Plaintiff and other purportedly similarly situated healthcare providers unsolicited fax advertisements without prior express invitation or permission. (ECF 1). Plaintiff alleged that he received faxes from Defendant on February 10, 2017, June 13, 2017, August 3, 2017, and August 8, 2017.

On January 10, 2023, Plaintiff filed a motion for class certification. (ECF 106, 118). By Memorandum Opinion and Order dated July 9, 2024, Plaintiff's motion for class certification was denied. (ECF 162, 163). During the interim, discovery ensued and was completed. On March 11, 2025, Plaintiff filed a second motion for class certification, (ECF 196, 200), which was denied, (ECF 241, 242). Thus, only Plaintiff's individual TCPA claim remains.

Pending before the Court[1] are Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment, each filed pursuant to Federal Rule of Civil Procedure, ("Rule"), 56. In its motion, Defendant argues that summary judgment on Plaintiff's individual TCPA claim should be granted because the faxes that Plaintiff received are not advertisements covered by the TCPA. Conversely, Plaintiff moves for summary judgment and argues that the uncontested record shows that Defendant sent Plaintiff four unsolicited faxes, which are advertisements under controlling law.

Both parties have filed responses in opposition to the other parties' summary judgment motion, replies in support of their respective motions for summary judgment, and extensive material in support of their respective motions, which this Court has considered.[2] The issues have been extensively briefed and are ripe for disposition. For the reasons set forth, Plaintiff's motion for summary judgment is granted, *in part*, and Defendant's motion is denied. A Judgement Order, consistent with this Opinion, will be entered against Defendant and in favor of Plaintiff in the amount of $2,000.

---

[1]    The parties represent that many documents before the Court contain confidential business information or other proprietary data. Thus, their briefing was filed under seal with accompanying redacted versions accessible to the public. As such, a redacted version of Defendant's motion for summary judgment appears at ECF 174 and a sealed version appears at ECF 177; and a redacted version of Plaintiff's motion for summary judgment appears at ECF 176 and a sealed version appears at ECF 180.

For ease of reference, this Court will hereinafter cite to the unredacted version of each parties' filings. In an effort to refrain from including confidential business information in this Opinion, the Court will refer in general terms to the exhibits and/or information filed under seal.

[2]    On January 16, 2026, both parties responded in opposition to each other's motion for summary judgment. (ECF 210, 213, 216, 217, 233). On February 4, 2026, both parties submitted reply briefs in support of their respective motions for summary judgment. (ECF 224, 226, 227, 232). These filings are accepted and considered. Defendant's briefing incorporates the exhibits filed at ECF 113 and 116, which have also been considered by the Court.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). When there are cross-motions for summary judgment, "[t]he court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." *Kapp v. Norfolk Southern Ry. Co.,* 350 F. Supp. 2d 597, 606 (M.D. Pa. 2004) (citing Fed. R. Civ. P. 56). Here, the facts relevant to the parties' respective motions on Plaintiff's individual TCPA claim are as follows:[3]

Plaintiff is a Michigan dental practice owned by Dr. Brian Lyngaas, ("Dr. Lyngaas"), a practicing dentist. In 2017, Plaintiff received four faxes from Defendant inviting it to register and participate in Defendant's National Healthcare Census, ("NHC"), survey in exchange for monetary payment of $30 or $35. Defendant does not dispute it sent the faxes.

Defendant is a global provider of information, innovative technology solutions, and contract research services, previously known as IMS Health. Its business includes surveying healthcare providers to obtain data to sell to its customers. (ECF 177 at 8; ECF 180 at 5). Defendant does not sell or market any goods or services to individual healthcare providers. (ECF 177 at 10-11). Defendant obtains its data by, *inter alia*, sending faxes to healthcare providers inviting their survey participation.

Defendant used the brand name "ImpactNetwork" for NHC recruitment. The NHC faxes Plaintiff received were substantially similar; each described the NHC and the benefits of completing the NHC survey. (ECF 177 at 8-9). All four faxes indicated that healthcare providers who completed the NHC would receive a $30 or $35 honorarium and included a unique invitation code that the healthcare provider was required to use to register to join ImpactNetwork. Two of the faxes specified that 99% of respondents qualify for the survey. One fax indicated that recipients who had already registered for ImpactNetwork and lost their login details could access a link to recover their account.

Due to various reasons, not all recipients of an NHC fax were ultimately eligible to complete the NHC survey. (*See* ECF 177 at 10). For example, Defendant refused responses from those who had previously completed the NHC

---

[3]    These facts align with the facts in the July 9, 2024 and March 17, 2026 Opinions, (*see* ECF 162, 241), and are also gleaned from the parties' briefs, exhibits, and statements of facts. To the extent any material fact is disputed, such dispute will be noted.

survey within a set time period.  Registration for ImpactNetwork filtered out such ineligible recipients.

Defendant only attempted to send NHC faxes to healthcare providers who met certain criteria—generally, those whom it believed would possess information relevant to the NHC survey's purpose.  (ECF 177 at 9).  Defendant relied on the third party, Odyssey Services, Inc., ("Odyssey"), to send its NHC faxes to select healthcare providers' fax numbers, which had been extracted from Defendant's database.

Defendant's database was derived from varied sources.  Significantly, in 2015, Defendant acquired SK&A, Inc., ("SK&A"), which maintained a telephone verified database comprised of individuals who participated in surveys aimed at verifying contact information and obtaining permission to utilize the same in direct marketing.  SK&A's database appears to have also consisted of data licensed from another company, ImpactRx (eventually acquired by Defendant), for use in direct marking.  Despite this, certain SK&A documents and its website provide that SK&A did not obtain affirmative consent from all individuals whose contact information it maintained.

Nonetheless, Defendant licensed the data from SK&A with the understanding that it could be used to send faxes to the healthcare providers and, in the summer of 2016, integrated SK&A's database into its own without a document trail.  Only three datasets containing a small portion of the SK&A database existed at the time this action was filed.  Apparently, Defendant is unable to determine whether a fax number was sourced from the SK&A database.  (*See* ECF 115 at 18).

In addition to the SK&A data, Defendant's database also consisted of healthcare providers who consented to receive faxes from Defendant in a variety of ways, including through Defendant's website, oral conversations, and emails with Defendant's representatives, and through prior NHC participation.  (*See* ECF 115 at 15-18).  Defendant was not required to and did not record all emails and conversations wherein healthcare providers consented to receive faxes.

While Defendant proffered the testimony from one of its employees that it was Defendant's standard practice to obtain consent prior to attempting to send any fax, no evidence produced throughout this litigation shows how Plaintiff's fax number was obtained by Defendant.

Plaintiff argues that it did not give Defendant permission to send faxes, nor did it provide its fax number to Defendant.  (ECF 180 at 15) (citing Dep. of O'Brien, 205:5-206:2, ECF 106-12).  Plaintiff designated Dr. Lyngaas as its Rule 30(b)(6) corporate witness.  (ECF 180 at 7-8).  At his deposition, Dr. Lyngaas testified that Plaintiff had a policy against providing its fax number and permitting or inviting fax advertisements to Plaintiff's fax machine, and that only he and/or the practice manager had permission to provide the fax number to third party companies.  (Dep.

of Lyngaas at 237:9-19, 262:11-263:3, 306:7-12, ECF 106-5).  Dr. Lyngaas further testified that he was not aware whether any of his employees had ever given out the fax number without his authorization or awareness, but that he trusted them to follow Plaintiff's policy.  (*Id.* at 237:9-19, 262:11-263:3).  Finally, Dr. Lyngaas testified that the office had partially transitioned to a Voice Over IP, ("VoIP"),[4] service in 2013, but maintained an analog line for fax use until the transition was complete in 2018.  (ECF 224 at 9) (citing Dep. of Lyngaas at 77:19-78:23; 78:19-79:09, ECF 106-5).  Dr. Lyngaas testified that he has never used an online faxing service or received a fax by e-mail.  (*Id.* at 222:14-19).

Plaintiff also presented for deposition, as a fact witness, its practice manager at the time the NHC faxes were received.  (Dep. of O'Brien at 45:10-16, 46:13-47:2, ECF 106-12).  The practice manager testified that only she and/or Dr. Lyngaas used Plaintiff's fax machine, which utilized Plaintiff's fax number and was connected to its analog line.  (*Id.* at 103:19-104:1, 110:8-15).  She did not use e-fax, and the systems in Plaintiff's office were not set up to utilize e-faxing.  (*Id.* at 25:18, 28:2, 121:7-9).

At her deposition, the practice manager affirmed that she knew that Plaintiff has a policy against giving out the fax number and testified that she explained the same to all of Plaintiff's employees.  (*Id.* at 117:3-14, 118:3-12, 119:3-8, 155:15-158:19).  Specifically, she "instructed [Plaintiff's employees] that if anybody calls and asks for the phone number, they're supposed to ask who is requesting it; and if it isn't one of [Plaintiff's] referring doctors or something to do with dentistry, they're not to give it out, and they don't."  (*Id.* at 155:15-158:19).  The practice manager testified that she never received any calls from third party companies — aside from insurance companies — to update Dr. Lyngaas' contact information.  (*Id.* at 186:14-187:2).  Further, she only provided updates for Dr. Lyngaas' contact information to insurance companies.  (*Id.* at 93:24-94:9).

## LEGAL STANDARD

Rule 56 governs summary judgment motion practice.  *See* Fed. R. Civ. P. 56.  Specifically, the court shall grant summary judgement if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.* at 56(a).  A fact is "material" if proof of its existence or non-existence "might affect the outcome of the suit under

---

[4]    "[T]he Federal Communications Commission [ ] describes VoIP as 'a technology that allows you to make voice calls using a broadband Internet connection ***instead of a regular (or analog) phone line***.'" *Fischbein v. IQVIA, Inc.*, No. CV 19-5365, 2025 WL 1616793, at *5 (E.D. Pa. June 5, 2025) (internal citation omitted) (emphasis in original).

governing law[,]" and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion pursuant to Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *See Qin*, 100 F.4th at 469 ("[S]ummary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." (internal citations omitted)).

Consistent with Rule 56, the movant "bears the initial [burden] of informing the . . . court of the basis for its motion and identifying those portions" of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B).

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions[,]" *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must

"go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Plaintiff moves for summary judgment on its TCPA claim and argues that the undisputed facts conclusively establish every element of its claim. Conversely, Defendant moves for summary judgment in its favor on Plaintiff's TCPA claim and argues that the NHC faxes are not "advertisements" under the TCPA or, alternatively, that triable issues of fact remain as to elements two and three of Plaintiff's TCPA claim.

### I.    *Plaintiff's Telephone Consumer Protection Act, ("TCPA"), Claim*

Section 227(b)(1)(C) of the TCPA, subject to exceptions,[5] prohibits "any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). A claim under Section 227(b)(1)(C) of the TCPA "has the following elements: (1) use of [any telephone facsimile machine, computer, or other device] (2) to send to a telephone facsimile machine (3) an unsolicited advertisement, (4) in the absence of an established business relationship, permission, or invitation." *Asher & Simons, P.A. v. j2 Glob. Canada, Inc.*, 965 F. Supp. 2d 701, 707 (D. Md. 2013) (quoting *id.*). This Court will address Defendant's liability, if any, as to each disputed element under the TCPA.

---

[5]    Those exceptions are not relevant in this case and need not be addressed.

### a. *Plaintiff Received the NHC Faxes on a Telephone Facsimile Machine*

Plaintiff argues that the undisputed evidence shows that Plaintiff received four NHC faxes from Defendant on the office fax machine. Defendant counters that the dispute is not whether Plaintiff received the faxes but instead whether Plaintiff received the faxes on a "telephone facsimile machine" as defined in the TCPA.

As noted, the TCPA makes it unlawful to, *inter alia*, "send, **to a telephone facsimile machine**, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C) (emphasis added). Under the TCPA, a "telephone facsimile machine" is defined as:

> [E]quipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

*Id.* at § 227(a)(3). "Thus, to fall within the [TCPA's] prohibition, a fax . . . can be received in only one way: on a 'telephone facsimile machine.'" *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 209 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2845 (2025); *see also Fischbein*, 2025 WL 1616793, at *6 ("[T]he plain language of the TCPA only provides protection to those who receive unsolicited advertisements on a traditional, stand-alone fax machine, which, unlike online fax services, has the built-in capacity to print onto paper.").

Here, Plaintiff produced testimonial and record evidence to support the fact that it received the NHC faxes over a regular telephone line by way of a traditional, stand-alone fax machine; *i.e.*, one that qualifies as a "telephone facsimile machine" for purposes of the TCPA. Specifically, Plaintiff: (1) provided in discovery responses that it received the NHC faxes via one of two brand-name, traditional fax machines;[6] (2) produced purchase receipts of a traditional fax machine; (3)

---

[6] Defendant argues that Plaintiff has, throughout this litigation, provided inconsistent evidence as to whether the NHC faxes were received on an HP Officejet Pro x476dw MFP or a Brother Device. (ECF 216 at 12-13). This apparent inconsistency is immaterial since both are traditional fax machines.

proffered billing records evidencing that it was charged for the analog line by which it received the NHC faxes during the relevant time period; and (4) produced testimony from Dr. Lyngaas (as Plaintiff's corporate representative) and Plaintiff's practice manager that Plaintiff maintained that analog line for faxing purposes only and only received faxes by traditional means.

Despite Plaintiff's evidence, Defendant attempts to create a factual dispute as to whether Plaintiff, in fact, received the faxes over a "regular telephone line" as the TCPA requires.  *See* 47 U.S.C. § 227(a)(3) (defining "telephone facsimile machine" in relevant part as equipment that transmits material "***over a regular telephone line***" (emphasis added)).  Defendant points to evidence that Plaintiff utilized a VoIP service for its communications to argue that the VoIP service ***may*** have been used by Plaintiff to receive faxes when the NHC faxes were received.  Thus, Defendant argues, the NHC faxes ***may*** have been received via internet connection instead of a regular telephone line.[7]

To support its argument, Defendant relies on an excerpt of Dr. Lyngaas' testimony and a portion of Plaintiff's expert report.[8]  Both are unavailing.  While Dr. Lyngaas testified that Plaintiff "went to a Voice Over IP system [in 2013] because the analog lines were insufficient," (Dep. of Lyngaas at 72:6-72:13, ECF 106-5), he further testified that Plaintiff additionally maintained its analog phone line — *i.e.*, a regular telephone line — and used it to receive faxes until 2018.  (*Id.* at 77:19-79:9).  In fact, until 2018, Plaintiff utilized separate providers for its VoIP service and its analog phone line; and the analog phone line was utilized only for its fax machine.   Dr. Lyngaas' deposition transcript, read in full, contradicts Defendant's proffered inference that the NHC faxes ***may*** have been received via VoIP service.

---

[7]     *See supra* at n.4 for a definition of VoIP.

[8]     As the parties have designated relevant portions of this expert report as confidential, the specifics of it are not discussed herein.

In light of these facts, Defendant has failed to create a genuine factual dispute whether Plaintiff received the NHC faxes on a "telephone facsimile machine." Accordingly, this Court finds that Plaintiff has provided sufficient evidence to show that the unsolicited faxes were received over a regular telephone line by way of a traditional fax machine, thus, meeting this element of its TCPA claim.

### b.  Plaintiff Did Not Consent to Receive the NHC Faxes

Plaintiff argues that Defendant sent the NHC faxes without Plaintiff's prior express invitation or permission. Defendant disagrees and argues that Plaintiff consented to receive the NHC faxes and has not carried its burden to refute its consent.[9]

Under the TCPA definition, "unsolicited" faxes are those transmitted "without prior express invitation or permission." 47 U.S.C. § 227(a)(5). The TCPA does not define the term "express." Nevertheless, "[e]xpress invitation or permission" is interchangeable with "express consent." *See Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 622 (3d Cir. 2020) ("[B]oth the language's plain meaning and the [Federal Communications Commissions'] interpretation show that 'express consent' is interchangeable with 'express invitation or permission.'"). Furthermore, courts apply the ordinary meaning of those terms:

> [E]xpress consent is consent "clearly and unmistakably stated." Consent is "a voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent." Similarly, express permission is "clearly and

---

[9]    Plaintiff argues that the burden to prove the affirmative defense of consent rests with Defendant. (*See* ECF 180 at 15). While Plaintiff is correct that Defendant carries said burden at trial, this Court agrees with Defendant that Plaintiff bears the burden of refuting his prior express consent at this summary judgment stage of the proceeding. *See* Fed. R. P. 56(c)(1)(B) ("A party asserting that a fact cannot be [ ] genuinely disputed must support the assertion by [ ] showing that the materials cited do not establish the [ ] presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); *see also Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017) (explaining that the party seeking summary judgment bears the burden of showing "the '*absence* of a genuine issue of material fact on his prior express consent'") (emphasis in original) (quoting *Celotex*, 477 U.S. at 323).

unmistakably granted by actions or words, oral or written," and permission is "the official act of allowing someone to do something."

*Id.* at 621 (citation modified). Thus, in the TCPA context, "the knowing, voluntary release of a fax number, and the receipt of a fax related to why the number was provided, constitutes express consent such that the faxes would be deemed *solicited*." *Id.* at 622 (emphasis in original). At the summary judgment stage, the "party seeking summary judgment" carries the burden to "show 'the *absence* of a genuine issue of material fact' on his prior express consent." *Daubert*, 861 F.3d at 390 (quoting *Celotex*, 477 U.S. at 323) (emphasis in original).

Here, to show that Plaintiff gave Defendant prior express consent to receive faxes from Defendant, Defendant relies on circumstantial evidence. Specifically, Defendant relies on its own "comprehensive consent practice," where it "routinely sought and obtained prior express permission from healthcare providers through multiple channels before attempting to send faxes." (ECF 217 at 23). Defendant points to the fact that its database of fax numbers included data from SK&A and that Defendant would obtain consent from healthcare providers through its website, oral conversations, emails, and prior NHC participation. However, Defendant has not proven that SK&A's data was obtained consensually or that Plaintiff's data was obtained via SK&A. Aside from its list of prior NHC participants (on which Dr. Lyngaas is not listed), Defendant does not track its efforts to obtain consent or provide any evidence that Plaintiff provided consent to Defendant.

To rebut Defendant's assertion of consent, Plaintiff proffers evidence to demonstrate it did not provide consent to Defendant. Plaintiff's owner, principal, and Rule 30(b)(6) corporate witness, Dr. Lyngaas, testified that he never provided his fax number to Defendant and never gave consent to Defendant to receive faxes. Likewise, Plaintiff's practice manager testified that she never provided its fax number to any third party company aside from insurance companies.

11

Further, both Dr. Lyngaas and Plaintiff's practice manager testified that Plaintiff's policy was against giving consent, which was communicated to all of its employees, and neither had any reason to believe that a member of its staff provided Plaintiff's fax number to any third party.

Defendant characterizes Dr. Lyngaas' testimony as self-serving and argues that his testimony is contradicted by the testimony of Plaintiff's practice manager. In support of this assertion, Defendant points to a selective excerpt of the practice manager's testimony wherein she testified that she would voluntarily provide Plaintiff's fax number to office callers when they were seeking the number for business-related purposes. (*See* ECF 217 at 23) (citing O'Brien Dep at 117:10-14, , ECF 106-12). Despite this selective example, Defendant's argument ignores that Plaintiff's practice manager further testified that, *inter alia*, her "routine has always been [to] only give out the fax number if [she] know[s] who's on the other end of the phone and that it's strictly for dental business only." (O'Brien Dep. at 118:3-12, ECF 106-12). In context of the entire deposition, business-related purposes does not equate to participation in market surveys.

Based on the totality of filings and deposition testimony presented, the Court finds that no reasonable jury could find that Plaintiff provided consent to receive the NHC faxes. The tenuous inference that Plaintiff *may* have done so, in reference to the many ways Defendant maintained a database of healthcare providers whom it believed provided consent and despite any direct evidence that would bolster such an inference, is insufficient to create a genuine dispute of material fact on this point. *See Daubert*, 861 F.3d at 390-91 (affirming district court holding that a mere inference that a TCPA plaintiff provided his contact information to an intermediary was insufficient to "show a genuine dispute on prior express consent"). Thus, the facts support a showing that Plaintiff did not provide consent. Accordingly, Plaintiff has successfully carried its burden to refute its consent.

c. *The NHC Faxes as Advertisements*

Finally, the parties dispute whether the unsolicited NHC faxes constitute advertisements under the TCPA. As a preliminary matter, this Court notes that it recently considered this issue in an analogous case involving the same counsel and the same Defendant. *See Fischbein v. IQVIA Inc.*, No. 19-cv-5365, 2021 WL 3353975 (E.D. Pa. July 30, 2021). As such, the following analysis largely tracks the reasoning in that earlier Opinion.

"Under the TCPA, it is unlawful to send an unsolicited advertisement by fax." *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 132 (3d Cir. 2019), *cert. denied*, 589 U.S. 1081 (2019) (quoting *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 248 (3d Cir. 2019) ("*NIA*")). The TCPA defines the term "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services[.]" 47 U.S.C. § 227(a)(5). Here, Defendant argues that the NHC faxes, which seek survey responses, are not advertisements because they do not mention the commercial "availability" or commercial "quality" of any "property, goods, or services." (ECF 177 at 12) (quoting 47 U.S.C. § 227(a)(5)). Defendant's argument is unpersuasive.

The United States Court of Appeals for the Third Circuit, ("Third Circuit"), has explained that, to meet the TCPA's definition of an advertisement, a fax "must promote goods or services to be bought or sold, and . . . have profit as an aim." *Optum*, 925 F.3d at 133 (quoting *NIA*, 767 F. App'x at 248). "In considering whether the sender of a fax has an intent to buy 'property, goods, or services' available commercially, the term used in the TCPA means the property, goods or services being bought or sold . . . ." *Fischbein v. Olson Research Group, Inc.*, 959 F.3d 559, 562 (3d Cir. 2020), ("*Olson*") (quoting 47 U.S.C. § 227(a)(5)).

In *Olson*, the Third Circuit explained that "a fax seeking a response to a survey is seeking a service." *Id.* Further, "an offer of payment . . . transforms the solicitation of responses to market

13

surveys into advertisements." *Id.* Here, the NHC faxes sent by Defendant seek a service from recipients: responses to the NHC survey; and offer $30 or $35 as compensation to recipients who provide that service. Thus, the NHC faxes are advertisements under the TCPA. *See id.* ("Any fax announcing the availability of an opportunity for the recipient to exchange goods or services for compensation is 'material advertising the commercial availability or quality of any property, goods, or services' within the TCPA." (quoting 47 U.S.C. § 227(a)(5)).

Defendant argues that *Olson* does not control because the NHC faxes sent here do not contain "an automatic 'offer of payment'" sufficient to convert them to TCPA advertisements. (ECF 227 at 4-5). Rather, Defendant argues, the NHC faxes invite healthcare providers to participate in the NHC study only after eligibility screening, subsequent registration, validation of their qualifications, and completion of the survey. As a result, not all fax recipients are ultimately eligible to complete the survey and receive compensation. This argument is unpersuasive.

The Third Circuit explained its reasoning in *Olson* with the following example:

> Ordinarily, a person giving blood is thought to have performed a benevolent act. However, a donor may give blood at a blood bank in exchange for money. There can be no question that if a blood bank sends a fax highlighting its willingness to purchase blood for money, that fax would be an advertisement.

959 F. 3d at 563. Thus, *Olson* stands for the proposition that a fax highlighting the sender's willingness to purchase survey responses for money constitutes an advertisement. Just as a blood donor may not be ultimately able to donate blood in exchange for money, it matters not whether a market survey fax recipient is ultimately eligible to sell his responses for money. Accordingly, the intermediary step of qualification between the solicitation for survey responses and compensation for responses does not alter the Court's finding that the NHC faxes sent qualify as TCPA advertisements.

The authorities cited by Defendant in support of a different outcome are distinguishable. *See NIA*, 767 F. App'x at 249 (holding that a fax was not advertisement where the fax did not offer to sell anything of value); *Mauthe v. Millennium Health LLC*, 58 F.4th 93 (3d Cir. 2023) (holding that a fax promoting a free educational seminar was not an advertisement); *Optum*, 925 F.3d at 133 (holding that a fax requesting responses to verify data maintained by the sender was not an advertisement under a TCPA third party based liability theory).[10]  Nor is Defendant's argument about the Federal Communications Commission, ("FCC"), guidelines in an inapposite context persuasive.  *See Olson*, 959 F.3d at 563 (explaining that the FCC interpretation of market surveys in the telemarketing context does not alter the conclusion that a fax offering compensation for response to a survey is an advertisement).  Because this Court finds that the (unsolicited) NHC faxes are advertisements for purposes of the TCPA and were sent to a fax machine, no genuine issue of material fact exists and, Defendant's motion for summary judgment is denied.

For the reasons set forth above, the Court also finds that Plaintiff has shown  that Defendant violated the TCPA when it sent Plaintiff four unsolicited faxes that constituted advertisements under the TCPA to Plaintiff's fax machine.  Therefore, Plaintiff's motion for summary judgment on its individual claim is granted. This Court will now address Plaintiff's entitlement to remedies.

### II.        *Permanent Injunction*

---

[10]     Defendant also urges this Court to consider a number of cases from other circuit and district courts. (*See, e.g.*, ECF 177 at 13-14) (citing *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Institute, Inc.*, 222 F. App'x 530 (8th Cir. 2007); *Exclusively Cats Veterinary Hospital, P.C. v. M/A/R/C/ Research,* 444 F. Supp. 3d 775, 775 (E.D. Mich. 2020)).  Because the present issue has been squarely addressed by the Third Circuit, this Court need not and does not consider those authorities.

In the complaint, Plaintiff requests a permanent injunction prohibiting Defendant from sending future fax advertisements.  To obtain a permanent injunction, a plaintiff must demonstrate four elements:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, Plaintiff has not shown an irreparable injury nor the inadequacy of the remedies available at law.  Accordingly, Plaintiff's request for a permanent injunction is denied.

### III.     *Request for Damages*

In its motion for summary judgment, Plaintiff requests that  this Court  exercise its discretion and award treble the statutory damages contemplated by the TCPA, arguing that Defendant's TCPA violation was willful and knowing.  In response, Defendant argues that Plaintiff has failed to establish that Defendant engaged in any type of volitional conduct that would warrant the imposition of trebled damages.

Under the TCPA's private right of action, a plaintiff may recover the greater of his "actual monetary loss from a [TCPA] violation" or "$500 in damages for each [TCPA] violation."  47 U.S.C. § 227(b)(3)(B).  However, "[i]f the court finds that the defendant willfully or knowingly violated [the TCPA], the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times" that amount.  *Id.* at § 227(b)(3)(C).

In the civil context, "willfulness" generally denotes conduct that "is intentional, or knowing, or voluntary, as distinguished from accidental, and that it is employed to characterize conduct marked by careless disregard whether or not one has the right so to act."  *Bedrosian v.*

*United States of Am., Dep't of the Treasury, Internal Revenue Serv.*, 912 F.3d 144, 152 (3d Cir. 2018); *see also KHS Corp. v. Singer Financial Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) ("A defendant commits a willful and knowing violation of the TCPA if he or she sends an unsolicited faxed advertisement that he or she knows to be a violation of the TCPA." (internal citation omitted)).

Notably, Plaintiff has not moved for nor presented evidence in support of an "actual monetary loss" resulting from Defendant's TCPA violations and, thus, only requests (and would be only entitled to) the statutory minimum award of $500 for each of the four unsolicited NHC faxes it received absent a finding that Defendant willfully or knowingly violated the TCPA.

Plaintiff's argument that it is entitled to trebled damages is, however, unavailing.[11] Nothing in the record suggest that Defendant intentionally, knowingly, or voluntarily violated the TCPA. While Defendant has not shown that it actually obtained Plaintiff's consent to receive the NHC faxes, there are sufficient facts of record upon which this Court can infer that Defendant *believed* it did. For instance, Defendant points to the fact that it believed its database contained fax numbers that were obtained consensually through various means, despite not being able to proffer evidence that tracks the same. Moreover, Defendant's legal argument that its NHC faxes are not "advertisements" under the TCPA, supports Defendant's good faith belief that the NHC faxes were not advertisements when sent — particularly because the binding Third Circuit precedent, under which this Court finds the NHC faxes are advertisements, postdates the time period during which Defendant sent its NHC faxes.

---

[11]    Based on the representation that the factual averments Plaintiff relies upon to make its argument for treble damages are confidential, these representations are not discussed in this Opinion. (*See* ECF 180 at 17; ECF 217 at 21-22). Those facts do not persuade the Court to alter its conclusion, which is made based on the reasoning stated herein.

17

Under these circumstances, judgment is entered in favor of Plaintiff "based upon the sum of the unsolicited transmissions multiplied by the amount of statutory damages provided under the TCPA." *City Select Auto Sales, Inc. v. David/Randall Assoc., Inc.*, 96 F. Supp. 3d 403, 427 (D.N.J. 2015). Plaintiff has argued four violations of Section 227(b) of the TCPA. This Court, therefore, finds that Plaintiff has proved Defendant liable for actual statutory damages in the amount of $2,000. Accordingly, judgment will be entered against Defendant in the amount of $2,000.

**CONCLUSION**

For the reasons set forth, Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted, insofar as it has established Defendant's liability on its TCPA claim. Plaintiff's motion for summary judgment is denied as to its request for treble damages and a permanent injunction. Accordingly, judgment will be entered in Plaintiff's favor against Defendant in the amount of $2,000. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.